Ruffin, Judge.
 

 The legislature in the act of 1814, authorises divorces in two cases ; the one, impotency at the time of the marriage and still continuing; the other, a separation by one party from the other, and living in a state of adultery. The act of 1827, c. 19. empowers the Superior Courts to divorce either from the bonds of matrimony, or from bed and board, whenever they may he satisfied of the justice of the application.
 

 This act imposes a task of great difficulty on the courts, and
 
 one,
 
 perhaps less
 
 agreeable than any
 
 they can be called on to perform, that of acting upon a most important subject without a rule laid down for them by the legislature, or heretofore adopted by their predecessors. The jurisdiction is a new one to our courts, and we find no precedents in those adjudications from which we draw our learning upon other subjects. Where such a jurisdiction is created, and the Legislature marks out those boundaries within which, in their wisdom, they think it proper the courts should be confined, or to which they shall go, obedience is both an easy and a pleasing duty. It is when we are told to do what is right, but not told what they deem right, that we are lost in the mazes of discretion. I cannot suppose however that the discretion conferred is a mere personal one, whether wild or sober; but must from the nature of things, be confined to the cases for which provision was before made by Saw or for those of a like kind. This presumption is the stronger, when the sub
 
 *541
 
 ject is one upon which it is known that speculatists and moralists base much disputed, differing as to the policy of divorces and their influence upon the parties themselves, during their union, and after their separation ; and upon which law-givers, acting upon experience and disregarding theory, have generally been agreed in refusing them altogether, where the marriage was' lawful, except in the case of impotency. If the court could think that the duty to be performed was intended to be referred to the priyate opinions of the judges, it would be promptly, though reluctantly, executed ; for there is no member of the court who is not strongly impressed with the conviction, that divorces ought in no case to be allowed, but in that already mentioned, and near consanguinity. Wo know, that individuals may experience much misery by an unhappy connexion, where tempers are incompatible ; where there are disgusting personal defects; moral depravity ; mutual injuries, proceeding even to unfaithfulness and unchastity. We know too, that like consequences often follow from a mere change of affection; and that the growing indifference of the one, not only produces pain to the other, but irritates and provokes reproaches, until hatred takes the place of former regards, and the tie between them is severed, as far as the law will allow it. If the consequence of dissolving the union entirely, slopped with those parties, and conferred on them peace, instead of the pain they suffered, it were but cruel ty not to unloose the chain. But the knowledge that when this last stage of distress arrived, it would of itself bring relief, would precipitate its approach. Slight differences would grow into lasting dissentions, and a single act of unfaithfulness could easily be converted into habitual adultery. These evils are, in a great measure, avoided by the principle of our law, which declares the marriage contract to make a perfect union between the parties, so that they become one ; and, to carry it out, they ought to believe and feel that they are ever to remain so — •that absolute union is also indissoluble. That and that alone, can impress upon each, the necessity of mutual forbearance, of submitting to slight inconve-
 
 *542
 
 <1 contributing to the econcile ourselves to inences, overcoming antipathies ar ■enjoyments of each other. Ve i what is inevitable. Experience fnjids pain more tolerable than it was expected to be; and habit makes even fetters light. Exertion, when fcnc wn to be useless, is unassaycd, though the struggle might be violent, if by possibility it could be successful. A married couple thus restrained, may become, if not devoted in their affections, at least discreet partners, striving together for the common good, and steady f riends, ready to perform all offices of kindness required by the other — instead of the dissentient heads of a distracted family, driven by inflamed passions to a degree of madness, not to be satisfied with less than an entire separation, though it bring disgrace on themselves ard their offspring, and deprive the latter of the greatest c arthly advantage, the nurture and admonitions of a parent. For these reasons in most, and I believe, in all Christian countries, although the contract be regarded by the 1 aw merely as civ il, it is usually executed with some religious ceremonial; so as in a degree to impress upon it, in the eyes of the individuals themselves, a character of holiness — that it may appear to be entered into before a witness who cannot be deceived or forget, and therefore, to bo infrangible. Our restless dispositions, and capricious tastes and tempers, require these checks and restraints. Why shall they be removed? Why give way to those very propensities in our nature, which it is our interest to repress? Is it not wiser, better, kinder to the parties themselves and their issue,.to declare the engagement to be unsuscep-tible of modification, much less abrogation — to make their Union so intimate, so close, and so firm, that no discoveries of concealed defects, more than supervenient disease, depravity, dissoluteness or dissension could rend it asunder? Such being the case, the state would be the more discreetly entered into, and the intercourse through life be the more harmonious. Such considerations have produced the private con victions felt by those who are now the judges of the court. But they seem not to have made the same impressions on all; and it is our duty,
 
 *543
 
 notwithstanding the unlimited powers which we are commanded to exercise, to endeavor to ascertain, as well as we may, in what cases the legislature would, upon ascertained facts, authorise the parties to abandon their former choice, and make a new selection.
 

 To the extent of the act of 1814, we consider the court constrained to go. And from the second section of the act of 1827, we suppose that we are not at liberty to stop-there, since that implies, that there are other cases besides those specified in that act, in which divorces seem to have been expected to be properly applied for, and consequently granted. Yet, from the preamble of the last statute, one might infer the contrary ; and that the great purpose of the legislature was to free itself from applications which ought not to be granted, but which,' from the hardship to the parties, and feeling in the members, were sometimes obtained
 
 ;
 
 and to turn them over to tribunals which would do more impartial, or exact justice. Indeed, it is difficult for persons to put a just interpretation upon terms, conferring in themselves such boundless power. We cannot intend that the meaning was, that the courts should grant divorces, where, under like circumstances, the legislature had, or might be expected to grant them by statute; for the contrary is implied by commanding the action of courts, usually regulated by fixed rules. The court is then obliged to adopt the middle course, and prescribe to itself such principles as we think sound law-givers, who allow of divorces at all, would send as rescripts to a judiciary.
 

 The case now before us, rests upon a matter existing at the time of the marriage. And it must be admitted to be as strong a case as can well be, if the petitioner acted properly, and with reasonable discretion or caution on his part. The principle of the common law upon the question of divorcing for matter existing at the time, is well established. If the marriage was not forbidden to both parties by their relationship, it was dissoluble at thcinstance of one for pre-contract and impotency. The former was of ecclesiastical origin, and no longer exists. The latter only remains, and is incorporated into our
 
 *544
 
 statute of 1814, at which time the legislature thought it unsafe to go farther. And since that time, although they allow the courts to go beyond that, they have been unwilling or unable to say how much farther. And the court is perhaps no less at a loss, nor less reluctant to proceed. The petitioner puts the case upon the ground of fraud. If it were a marriage to which he had been compelled by force, or in which one woman personated another, where indeed, there was no consent on his part, that would probably be cause for a divorce. But the fraud here consists in the other party not having the qualities and character he supposed her to have. It would be dangerous to lay down a rule of that sort. It is impossible to say where it would stop ; what were the qualities in a wife which a husband wished or expected, or had reason to expect. It cannot be known what defects he knew of and disregarded ; what were concealed, and what communicated. Treaties upon this subject, are generally conducted in secret, and the particular,? cannot be proved. It is moreover perfectly understood, that each appears, and will appear to the best advantage. It is not to be expected, that the parties will declare their own defects, as the seller of property would, and especially that they will publish their shame. Concealment is not a fraud in such a case — disclosure is not looked for — active misrepresentations and studied and effectual contrivances to deceive, are, at least, to be required, to give it that character; and the other party must appear not to have been voluntarily blind, but to have been the victim of a deception which would have beguiled a person of ordinary prudence. I know not how far the principle contended for, would extend. If it embrace a case of pregnancy, it will next claim that of incontinence ; it will be said, the husband was well acquainted with the female, and never suspected her, and has been deceived; then, that be was a stranger to her, smitten at first sight, and drawn, on the sudden, into a marriage with a prostitute; that he was young and inexperienced, hurried on by impetuous passion, or that he was in his dotage, and advantage taken of the lusts of his imagination, which
 
 *545
 
 were stronger than his understanding. From uncleanness, it may descend to the minor faults of temper, idleness, sluttishness, extravagance, coldness, or even to fortune inadequate to representations, or perhaps expectations. There is, in general, no safe rule, but this: that persons who marry, agree to take each other
 
 as they are.
 
 Whatever defects there may be, some must have been counted on, and wo cannot tell which. There are degrees in imperfection, as well as perfection
 
 ;
 
 and the wife may prove much better than the husband expected ; so if she turn out worse, he must keep her because he chose her. It is not the policy of the law, that man or woman, who has once fallen, shall be condemned to celibacy, and doomed to incontinence. Yet such would he the effect of allowing this petition. The woman must disclose her misfortune and crime, or else the marriage will be declared
 
 void;
 
 but if she disclose it, she loses that marriage, and places it in the power of the suitor to' proclaim her shame,, and preclude her from any other alliance, and from reformation. The safer, more politic, and more humane principle is, to make it his interest to conceal the fault as well as hers, and by uniting their interests, to induce both to look forward to future proprieties, and be blind to what is behind. After the law upon this subject, has been settled for ages, and when the legislature has been unable to devise any alteration, founded on a general principle, worthy of their adoption, it would be too much to expect a court to pretend to more wisdom than the legislature and our fore-fathers united, and strike out new theories. And we cannot but say, that nothing could he more dangerous than to allow those who have agreed to take each other, in terms
 
 for better, jfor 'worse,
 
 to be permitted to say, that one of the parties is worse than was expected, and therefore, the contract ought to be no longer binding.
 

 These are the general principles by which the court is constrained to limit and regulate the unrestrained liberty of rioting at large, to which it is left. The court is, nevertheless, entirely sensible of the peculiar character of this case, produced by the odious circumstance
 
 *546
 
 of color. It appeals powerfully to the prejudices, the
 
 virtues
 
 and vices
 
 oí
 
 our nature. The stigma in our state of society is so indelible, the degradation so absolute, and the abhorrence of the community against the offender, and contempt for the husband so marked and unextinguishablc, that the court has not been able, without a struggle, to follow those rules which their dispassionate judgment sanctions. But there are other circumstances in this case, which relieve us from all difficulty. The petitioner charges, that he was married on the 18th of Bocember 1828, and that the child was born on the 1st day of May, 1829 ; up to that time, he lived with his wife, and upon that event left her. He does not venture to swear, that lie believed her chaste, at the time of the marriage. It must be taken, that he did not; if he had, it would have been the first thing thought of, to aggravate his case. Suppose that we are to presume, that he means to admit a criminal conversation between themselves ; and that is the most favorable to him — what claims has he to j’clief, upon the ground of grosser incontinence than that in which he had participated? The legislature gives us in the act of 1814, an analogous rule for our government in this case. — ■ They declare that condonation shall destroy the right of divorce ; cither, because it evinces prior consent, or an indifference to the crime, which alike render him unworthy to ask the interposition of the law. Upon the same principle, if a man will marry a woman, whom he knows to be a prostitute, and she takes no affirmative means of establishing a conviction in his mind, that he alone, has had access to her, he can not complain if ho has been betrayed by a confidence as irrational, as it proves to be unfounded. No man in his senses can anticipate less. The fascinations and the total depravation of an unchaste woman have been proverbial, at least, since the days of Solomon. He who marries a wanton, knowing her true character, submits himself to the lowest degradation, and imposes on himself. No fraud can be said to be practised on him by mere silence and concealment of other aberrations. But if such bo not
 
 *547
 
 the fact in this case, then, that which is necessarily the state of it, leaves the petitioner as little merit. If he had not been iumsclt, guilty, ho liad the more reason to believe that others had. It is not alleged that the birth of the child was premature. Half the period of gestation liad expired at the marriage. His attention must have been attracted to the person of the woman he was about marrying-, and the long intimacy and courtship which he mentions, must have enabled him to detect her situation. Why did he marry her? It may be póssiblc, that he was deceived, and not by his own negligence, at that period. But it is impossible, that any art or device could have long prevented him from kuowing the truth, that is, as far as this, that she was pregnant. If not by him, why did he live with her? Shalt ho be heard to say, that he would, have been content, if the child, though not his own, had been white? We cannot but feel for his digrace; but it is rather sympathy with, him, as being one of the family of man, than as he is, individually. His disgrace is voluntarily incurred, and ho lias no elevation of sentiment or feeling above it. Wo think him criminally accessary to his own dishonor, in marrying a woman whom he knew to be lewd; or, by continuing his cohabitation, after he must have known it, up to the happening'of an event, by whicli the world acquired the same knowledge. He now asks to be freed from his bonds, because the infamy of his wife lias become notorious, though ho could reconcile himself, in secret,’ to the crime which makes her infamous. Such a prayer must be rejected, and the judgment of the Superior Court affirmed.
 

 The full discussion thus entered into, has been deemed due to the legislature and the court itself, that the principles which will guide the court, may be plainly known. It is proper that they should be placed before the legislature, that if thought wrong by them, the court may be spared from running further into error, by having an authoritative guide to future action, in a rule prescribed definitely by the legislature itself.
 

 Per Curiam. — Judgment appirmed.