Boffin, C. J.
 

 It is probably true, that, upon the evidence of access in this case, the law would presume conclusively, that the issue is legitimate. And it is certain, the oath of the wife, by itself, was not sufficient, at com-
 
 *133
 
 moil law, to bastardize her issue, so as to exonerate her husband from its maintenance and charge another person with it; and we suppose that the Act of 1814 has not made any change in that respect. But it seems to the Court, that those questions could not be raised in the manner and in the stage of the case, in which they were here brought forward. If they could, we are not prepared to say the question of paternity was not left to the jury properly, under the statute, upon the contrariant legal presumptions, aided on the one side or the other by other circumstances.
 

 But wc need not consider that point, as the Court hold, that, on the trial of this issue, no part of the defendant’s evidence ought to have been heard, for the reason, that it was irrelevant, and, indeed, contradictory to the admission or implication in the issue, that the child was a bastard. That, we think, will be apparent upon considering the difference between the several questions thus presented, the state of the law before the act of 1814, and the alterations introduced by it.
 

 When it was held, notwitstanding the statutes spoke only of single women, that the true question under them was, whether the child, sought to be affiliated, was a bastard, and therefore that a man might be charged, as the father of a married woman’s child, the necessary consequence was, that he could be so charged, only when such circumstances were found upon competent evidence, as to constitute the child a bastard in law : since every married woman’s child is
 
 prima facie
 
 the issue of the husband. Hence" the mother appearing in the proceedings to be married, it was requisite the conviction should state the impotenóy or non access of the husband, and that it was proved otherwise than by the wife; as she was only competent, and that, from necessity, to prove the criminal conversation, of which the child was the fruit, Of course, it would be open to the.accused, before
 
 *134
 
 the Justices^ to offer evidence of access or opportunity of access of the husband, and thereby seek to establish the legitimacy of the child ; and it would be for the Justices, upon the whole evidence and according to its legal weight, to determine, whether the child was legitimate or a bastard. If the former was found, as established by the proofs, the party accused was to be at once discharged ; and if the latter, the party was conclusively fixed as the father. In the first case, the party was necessarily discharged, although the Justices might believe, upon the oath of the mother, that he was in fact the father ; for the reason, that, nevertheless, the child could not legally be adjudged a bastard. It is, thus manifest, that, the first enquiry in such cases is, whether the child be a bastard, or not. That is preliminary to and altogether distinct from the enquiry, who, supposing the child to be a bastard, is the father
 
 1
 
 Now, it was at all times the course for the Superior Courts in England to re-examine, upon
 
 certiorari,
 
 orders of bastardy in such cases, and to quash them, when impotency or non-access of the husband did not appear in them to have been established upon evidence, which was not apparently incompetent. It was a settled jurisdiction at common law.
 
 Rex
 
 v. Reading. Rep. Temp. Hardw. 19.
 
 Rex
 
 v.
 
 Rooke,
 
 1 Wils. 340.
 
 Rex
 
 v.
 
 Luffe,
 
 8 East. 193. Of course it existed here, also, as was distinctly stated in
 
 Barrow's case,
 
 3 Murp. 121. There, a mother of mixed blood charged a white man, and the Court said, that, independently of the Act of 1814, the County Court could not rightfully charge a person, if it appeared that the magistrates proceeded against law in their judgment; for that, in summary proceedings, Justices of the Peace must observe the course of the common law in raising a charge against the party, giving him notice of trial and opportunity of defence, and, unless a statute direct otherwise, receiving only such evidence against him as the common law approves. It is true, there is an intimation
 
 *135
 
 that, by virtue of the Act of IS 14, the objection to the mother’s competency might be taken by plea, that she was' of mixed blood. But it is obvious, that was an inadvertency ; for, in the first place, that Act gives no such issue, but only that the party charged is not the father ; and, in the next place, it is the province of the Court to decide every question of competency of evidence, and it cannot, in any case, be referred to the jury, either as to the matter of law or the matter of fact, on which the question of law is raised. The issue given by the statute had not been tendered in that case. The party had asked leave to plead, that the woman was of mixed blood, within the fourth degree. In substance, then, it was a motion to quash on that ground, which was over .ruled, and carried up by appeal; and the Act of 1814 had nothing to do with the matter. Indeed, the Court said expressly, that the party was entitled to the redress, independently of the Act. Such having been the law, a person who was about to be charged improperly with the maintenance of a child of a married woman, with which another was already chargeable in law, as the father by legal presumption, had a direct and adequate remedy by
 
 certiorari
 
 at common law, or by a motion to quash in the County Court and an appeal to the Superior Court, under our statute. There was, therefore, no occasion for a special statute to afford a remedy in such a case ; nor is there any ground for carrying the Act of 1814, by construction, beyond its words'and apparent purport, for that purpose.
 

 If there were no other fit remedy, then, perhaps this case might be deemed within the mischief, and brought within the operation of the Act. But as that was not at all true, the Act, although remedial, is to be confined to the case and the remedy mentioned in it, and not be extended beyond its language and obvious scope, so as to embrace a case, in which there was before fit and ample, redress.
 

 
 *136
 
 The question then recurs, what are the words and purposes of the Statute ? The enactment is, that when a a man is accused by a woman “of being the father of her bastard child, lie shall be entitled to have an issue made up to try, whether he be the father of such child.” Furthermore, it makes the examination of the woman
 
 prima facie
 
 evidence, on the trial, against the accused. Since it was manifest, as already remarked, that, under the Act of 1741, it was essential, before entering on the enquiry, who was to be charged as the father of the child, that it should be determined, that such child was a bastard, so it continues to be, now ithstanding t be Act of 1814 ; for it. is obvious that it is assumed in the latter Aet to have been duly determined, that the chi Id is a bastard, before the accused tenders the issue, that he is not the father. Indeed, the bastardy is impliedly admitted in the issue its< If. It is not, whether the child be a bastard or not. No such issue is given. But the Act is, that one, charged with being the father of a
 
 bastard
 
 child, may aver, that
 
 he is not
 
 the father
 
 of such
 
 child. That puts in issue the very fact of begetting the
 
 child,
 
 and nothing more. The man may clear himself by shewing non-access or impotency, or any other natural fact, inconsistent with his paternity, and. were it not for the peculiar force given by the Statute, according to its necessary construction, to the examination of the woman, as evidence to the jury, the party might also, if practicable, give evidence that another person was the father, and thus, negatively disprove his own paternity. But, even in that case evidence, either direct or presumptive, of the paternity of the hus band must, of necessity, be excluded, since it would be contrary to the implication, in the issue, of the bastar Jy of the child. This construction is fortified by the provision, whiih makes the examination of the mother
 
 prima facie
 
 evidence against the accused; that is, to support the issue throughout, on behalf of the State. For, if the
 
 *137
 
 legitimacy or illegitimacy of the child be involved in the issue, then the evidence of the wife would not only be made evidence of the non-access of the husband, but, by itself, it would be made sufficient evidence thereof, unless disproved by the accused. The rule of evidence, upon so essential a point, ought not thus to be changed by a side wind. It is clear, that it was not in the contemplation of the legislature, and, indeed, is in opposition to the policy of the Act, as set forth in the preamble. The mischief recited is, that the oath of the woman was conclusive evidence against the alleged father: which, instead of suppressing vice, had a contrary effect, by encouraging abandoned women in their courses with low and poor men, as they were able, by perjury, to lay their offspring to men of character and property; and, the remedy enacted is, that her examination should be
 
 pripia facie
 
 evidence only. Thus it is seen, that the purposes of the Act were to restrain the operation of the mother’s oath, and impair its effect under the Act of 1741, and by no means to enlarge it by rendering it competent to a point, to which at common law and by that Act it was not. In other words, the Act was made for the relief of a man falsely accused, and intended to enable him the better to defend himself by disproving the woman’s oath, that he begat a child by her, otherwise proved to be a bastard — and not to give such an effect to her oath, as to make it in itself evidence, much less
 
 prima facie
 
 evidence, of the bastardy of the child. Then, whether regard be had to the state of the law previously, or to the language or policy of the Act of 1816, the conclusion is, that the illegitimacy of the child is assumed and admitted in the issue, tendered by the defendant, and, therefore, that it was not competent for him to give evidence, on the triads, of the issue, of the husband’s access, or of any other fa«$" tending to establish the legitimacy of the child» lathe
 
 *138
 
 issue he put himself on
 
 the fact,
 
 that he is
 
 not,
 
 while the State affirms that
 
 he is,
 
 the father of the child.
 

 It will be readily perceived, that this determination acknowledges the right of the man charged, to insist, that the child is legitimate, and So, that he cannot be saddled with the maintenance; and that it only excludes him from so insisting upon the trial of the issue. For the reasons given, it seems clearly better for him, that he should present that point by itself, and before he raises the other question, namely, whether he be the father, supposing the child to be a bastard ; and likewise it pro-' motes the public justice and that due to the mother, to separate those enquiries, and thereby prevent surprise on either side in disposing of them. The judgment must therefore be affirmed 5 and this decision must be certiffed to the Superior Court, with directions to that Court to bind the defendant to appear at the County Court, and to issue a writ of procedendo to the County Court, to take the bond from tbe defendant for the maintenance of the child, &c., as prescribed in the Statute.
 

 Per Ctuttam.
 

 Ordered accordingly.