HARRY A. WALLACE v. VENA WALLACE, Appellant.

Divorce: GROUNDS: PREGNANCY BEFORE MARRIAGE. The fact that
1   a husband had carnal knowledge of his wife prior to marriage
    will not preclude a divorce on the ground of her pregnancy
    by another at that time, where he was *wrongfully induced by*

the wife to believe that her condition was the result of his . intercourse.

**Same:** LEGITIMACY OF ISSUE: PRESUMPTION. A child born at any time during wedlock is presumed a legitimate issue; but this may be rebutted by showing the husband incompetent, or that he had no access to the mother, or was absent during the period at which the child must have been begotten, or was present under such circumstances as clearly preclude the idea of paternity.

**Same:** EVIDENCE. In an action for divorce on the ground that the wife was pregnant by another at the time of marriage, neither the declarations nor the evidence of either spouse is competent on the question of access or nonaccess of one to the other; but this does not prohibit the use in evidence of the wife's admissions of illicit relations with one other than her husband.

*Appeal from Ida District Court.*— HON. F. M. POWERS, Judge.

WEDNESDAY, JANUARY 15, 1908.

ACTION for divorce resulted in a decree as prayed. The defendant appeals.— *Reversed.*

*Chas. S. Macomber,* for appellant.

*C. W. Piersol* and *Johnston Bros.,* for appellee.

LADD, C. J.— The parties hereto married December 12, 1905; he then being twenty years of age and she but seventeen years. They had been attending the local high school, and living with their parents, who had been near neighbors for many years. They cohabited until January 25, 1906, and on February 1st following this suit was begun, praying for divorce on the ground that at the time of their marriage defendant was pregnant by a person other than plaintiff, of which fact he was then ignorant. At the time of the marriage plaintiff knew of her pregnancy, but supposed this was by himself. She gave birth to a child April 2, 1906. The only evidence tending to support the contention that the

child was begotten by another was an affidavit of the wife, procured by plaintiff's attorney, describing her relations in detail with another young man, culminating in pregnancy July 13, 1905, because of which she had induced plaintiff to attempt sexual intercourse with her about six weeks later, and again in September following, and still again a month thereafter; these attempts being ineffectual, owing to premature external emissions, but penetration after emission being accomplished in September, and stating that plaintiff was induced to believe himself the cause of her condition and to marry her.  Counsel objected to the introduction of this affidavit " as incompetent, immaterial, and irrelevant, and for the reason that it is scandalous, indecent, and against public policy."  The objection was overruled, and, if rightly so, it may be conceded that the decree entered granting the divorce should be affirmed.

Our statute provides that " the husband may obtain a divorce from the wife  . . .  when the wife at the time of the marriage was pregnant by another than the husband of which he had no knowledge, unless such husband had an illegitimate child or children then living, which at the time of the marriage was unknown to the wife."  Section 3175, Code.  Independent of statute, the decisions are to the effect that wherever the woman is *encient* by another at the time of marriage, and the husband is not aware of the fact, but supposes her chaste, he may have the marriage declared void.  This is on the theory that a woman to be marriageable must be capable of bearing children to her husband, and, if with child by another, she is not in a condition to do so, and concealment of that fact or a misrepresentation thereof is such a fraud on the husband as will avoid the marriage if he was ignorant of her condition and believed her virtuous. *Reynolds v. Reynolds,* 3 Allen (Mass.) 605; *Baker v. Baker,* 13 Cal. 87, 102; *Carris v. Carris,* 24 N. J. Eq. 516; *Ritter v. Ritter,* 5 Blackf. (Ind.) 81.  But most of the authorities

1. DIVORCE: grounds: pregnancy before marriage.

are to the effect that, when the husband has had sexual intercourse with the wife before marriage and knew that she was pregnant, though falsely convinced that the child was begotten by himself, and its birth proves it not to be his, he must submit to the bonds of matrimony. *Crehore v. Crehore,* 97 Mass. 330 (93 Am. Dec. 98); *Scroggins v. Scroggins,* 14 N. C. 535; *Seilheimer v. Seilheimer,* 40 N. J. Eq. 412 (2 Atl. 376); *Varney v. Varney,* 52 Wis. 120 (8 N. W. 739, 38 Am. Rep. 726); *Hoffman v. Hoffman,* 30 Pa. 417. The theory on which this line of decisions proceeds is that, having participated in the wife's incontinence before marriage, the husband is apprised of her want of chastity, and therefore is not in a situation to complain of being deceived by her false assurances that he was the only participant in her illicit intercourse. The well-recognized exception to this rule is where birth is given to a mulatto; the parties to the marriage being white. *Barden v. Barden,* 14 N. C. 548; *Scott v. Shufeldt,* 5 Paige (N. Y.) 43. This exception is said to be " a concession to deep-rooted and virtuous prejudices of the community on the subject," and to be grounded on the supposition that " the blood of the woman has been tainted by mingling with the first (mulatto) child, and she is incapable of bearing children that will not show the African blood." See Bishop, Marriage & Divorce, section 191.

Aside from exception based on these grounds, we have discovered but one case awarding relief where there has been coition between the husband and wife prior to marriage, and that was by an equally divided court. *Sissung v. Sissung,* 65 Mich. 168 (31 N. W. 770). In that case Morse and Campbell, JJ., were of the opinion that where a young man, inexperienced in the ways of the world and women, had intercourse with a woman then pregnant by another man, and upon her demand married her under the belief that prior to meeting him she had been chaste, with the laudable purpose of repairing the wrong he had done her

and to save her reputation, he was entitled to relief; the former saying: " If the story of complainant is true, he followed the dictates of conscience, and entered into the marriage relation with defendant from worthy motives. The betrayer of the innocent cannot be condemned for marrying his victim. The seduction is a crime to be execrated, but marriage afterwards is to some extent a reparation of the wrong, at least, it is the best amendment he can make the injured one. The mere act of sexual intercourse between a single man and an unmarried woman is not a crime at common law, or under any statute of this State. The fault of the complainant in sinning against the moral law does not entitle him to be deceived and defrauded in this manner. Acting from the best of motives, as all must concede, to repair the wrong as best he could under the circumstances, he marries the defendant in the full belief that he has been the means of ruining an innocent and chaste woman, and that the child in her womb is his. This belief has been engendered by the false statements of the defendant, purposely made to procure such marriage. The birth of the child proves conclusively that the woman was unchaste before he met her, that he was unaware of her pregnancy by another, and that she led him to believe that he alone was the author of her shame for the express purpose of accomplishing her marriage with him."

On the other hand, Sherwood and Champlin, JJ., after reviewing the decisions referred to and others, were of the opinion that " when this girl yielded to the lascivious approaches of this complainant, and became defiled by him under the circumstances stated in the bill, she gave him evidence of her true character, and he was bound to take notice, at his peril, that others would be indulged by her under similar circumstances; and, when she engaged him in marriage, and told him she was pregnant by him, he had been sufficiently advised that the paternity of the child was liable to be in another, and if, without making any further investi-

gation in the matter, he married her, he knew he did so at the peril of being made the dupe of misrepresentation without remedy, because their entire intercourse up to the time of marriage had been unlawful, and both parties were *particeps criminis.*"

The section of the Code quoted contains no provision with reference to the prior relations of the parties to the marriage contract, and, if their attempted coition shall defeat the relief by divorce where the wife is pregnant by a stranger at the time, this must be read into the statute by construction, or must result from holding that, owing to the husband's participation in his wife's incontinency, he has been put on inquiry as to her relations with other men, and cannot complain. But this would leave the unsophisticated and unwary without protection and condemn him who, with the best of motives, undertakes reparation for his supposed victim and compel him to suffer the consequences and burden of her deception. If the proof be of that character exacted in such cases, there can be no objection on grounds of public policy to granting a decree of divorce whenever it is made to appear that the wife at the time of her marriage was pregnant by another than her husband, of which fact he was unaware. As said by Morse, J., in the Michigan case: " The essence of the marriage contract is wanting when the woman at the time of its consummation is bearing in her womb knowingly the fruit of her illicit intercourse with a stranger; and the result is the same whether the husband is ignorant of her pregnancy and believes her chaste, or is cognizant of her condition, but has been led to believe the child is his."

In our opinion the illicit relations of the husband with his wife before marriage is not a bar to the remedy created by statute. There is no more reason for denying the husband relief in such a case than there would be to refuse to make inquiry concerning the paternity of a child begotten after marriage. In 2 Starkie on Evidence, 196, in dis-

cussing the question as to the legitimacy of a child begotten before marriage, the author says: " It seems, however, that in such cases it is competent to prove that it was impossible that the husband could have been the father, for a stronger presumption cannot arise in such a case than is made in favor of a child conceived after wedlock." The latter is not conclusive, but, under well-recognized restrictions, inquiry is permitted into the parentage of children born in wedlock, and inquiries into the paternity of a child begotten prior thereto can be fraught with no greater danger to the parties interested, to society, or the State. On the contrary, it may operate to shield the confiding, who, though guilty of moral wrong, has not violated the law, and has acted with the best of motives in entering into the marital relation, induced by deception and fraud. Because of this he ought not to be condemned to consort with her whose dupe and victim he is proved to be during life and to bear the burden of supporting her spurious offspring. There is *dicta* to the contrary in *State v. Romaine*, 58 Iowa, 46, but the decision turned on the undisputed evidence showing access of the husband during the period when conception must have occurred. Moreover, no attention was given to this statute in the opinion. In *State v. Shoemaker*, 62 Iowa, 343, the husband was informed of his wife's condition, and the court held that by virtue of the marriage the child had been adopted into the family, and the husband as a result stood *in loco parentis*. The manifest design of the statute is to defeat deception and fraud of the kind mentioned, and the fact of undue intimacy with his wife prior to marriage will not deprive the husband of the benefit thereof by demanding a divorce on the ground of pregnancy by another.

II. But precisely the same rules of evidence obtain in such a case as when it is sought to prove that a **2. SAME: legitimacy of issue: presumption.** child conceived during wedlock is not the offspring of the husband. Born in wedlock the presumption of the legitimacy of the child obtains, even

though this happen so soon after marriage as to render it certain that it was the result of coition prior thereto. *State v. Shoemaker,* 62 Iowa, 343. In other words, antenuptial conception does not weaken the presumption of legitimacy arising from postnuptial birth. *Dennison v. Page,* 29 Pa. 420 (72 Am. Dec. 644); *Wilson v. Babb,* 18 S. C. 59; *Zachmann v. Zachmann,* 201 Ill. 380 (66 N. E. 256, 94 Am. St. Rep. 180); 8 Ency. of Evidence, 166. And, when there has been antenuptial coition and the husband has married under the supposition that his wife's pregnancy was by himself, evidence of nonaccess must be of the same conclusive character exacted to bastardize a child conceived during wedlock. In *Dennison v. Page,* 29 Pa. 420 (72 Am. Dec. 644), the court, after reviewing many decisions, said: "Whether it was begotten in or out of wedlock, where the marriage precedes the birth, the presumption of paternity is the same, and the like evidence is required to bastardize the issue. That evidence is proof of nonaccess, where the husband, or he who subsequently becomes such, has access to the mother of the child, the presumption that he is its father is conclusive." See, also, *State v. Romaine, supra.* Anciently this could not be done, save by showing that the husband was impotent or beyond the four seas, but the modern doctrine is in accord with the conclusion announced in *Hargrave v. Hargrave,* 9 Beav. 552, that this presumption may be rebutted by showing (1) the husband incompetent; (2) that he was entirely absent so as to have no access to the mother; (3) or entirely absent at the period during which the child, in the course of nature, must have been begotten; (4) and present only under circumstances which afford clear and satisfactory proof that there was no sexual intercourse. *Woodward v. Blue,* 107 N. C. 407 (12 S. E. 453, 10 L. R. A. 662, and note, 22 Am. St. Rep. 897); *Scanlon v. Walshe,* 81 Md. 118 (31 Atl. 498, 48 Am. St. Rep. 488); *Goss v. Froman,* 89 Ky. 318 (12 S. W. 387, 8 L. R. A. 102).

The parties to this action had lived near neighbors, and been acquainted with each other for many years, and there is nothing in the record indicating that he might not have been the father of the child, save her own declarations contained in the affidavit.

3. SAME: evidence.

Anciently such declarations, as appears from Prof. Wigmore's work on Evidence (volume 3, section 2063), were received in evidence. But in *Goodright v. Moss.,* Cowp. 591, Lord Mansfield declared that "the law of England is clear that the declarations of a father or mother cannot be admitted to bastardize the issue born after marriage. . . . It is a rule founded in decency, morality, and policy that they shall not be permitted to say after marriage that they had had no connection, and therefore the offspring is spurious, more especially the mother, who is the offending party." Since, then, the current of authority in England as well as in this country has been in harmony with the rule as thus stated, regardless of statutory provisions, obviating incompetency on the ground of interest. *Egbert v. Greenwalt,* 44 Mich. 245 (6 N. W. 654, 38 Am. Rep. 260); *Tioga County v. South Creek Township,* 75 Pa. 436; *Boykin v. Boykin,* 70 N. C. 262 (16 Am. Rep. 776); *Kelley v. Proctor,* 41 N. H. 139; *Chamberlain v. People,* 23 N. Y. 88 (80 Am. Dec. 255); *Rabeke v. Baer,* 115 Mich. 328 (73 N. W. 242, 69 Am. St. Rep. 567), and extended note collecting cases. *Estate of Mills,* 137 Cal. 298 (70 Pac. 91, 92 Am. St. Rep. 175), where the court observed, with reference to the statute concerning interest, that "it was not intended to abrogate the rules of evidence founded upon the reason and experience of ages. Nor was it intended to break down a rule founded on decency, morality, and public policy." In so holding we have not overlooked the protest of Prof. Wigmore in his valuable work on Evidence (section 2063), but are not persuaded that he, rather than the great array of decisions cited in his notes supporting the rule as stated by Lord Mansfield and all other text-writers, is correct.

The rule, as we think, is founded on sound public policy, and, being in accord with the current of authority, should be adhered to.   Declarations, as well as the evidence of either husband or wife as to access or nonaccess, are excluded whenever the issue of legitimacy is involved, and this includes cases of antenuptial conception.   The first ruling on this latter phase of the inquiry was by Sir John Romilly, Master of the Rolls, in 1856 (*Anon v. Anon*, 23 Beav. 273), and it has been approved by the consensus of judicial opinion since. *Estate of Mills, supra; State v. Wilson*, 32 N. C. 131; *Tioga County v. South Creek Twp.*, 75 Pa. 433; *Parker v. Way*, 15 N. H. 45.

Some question is raised as to whether the rule should be applied in other than causes in which the question of legitimacy only is involved.   In Prof. Wigmore's notes it is said to obtain in all cases, and an examination of the authorities sustains this view.   Thus in *Parker v. Way, supra*, such evidence was held to be inadmissible in an action on a promissory note; in *Tioga County v. South Creek Twp., supra*, to determine the settlement of a pauper; in *State v. Wilson, supra*, in bastardy proceeding; in *Commonwealth v. Shepherd*, 6 Bin. (Pa.) 288 (6 Am. Dec. 449), an indictment for fornication resulting in the birth of a bastard; in *Rabeke v. Baer, supra*, an action for seduction; in *Simon v. State*, 31 Tex. Cr. R. 186 (20 S. W. 399, 716, 37 Am. St. Rep. 802), an indictment for incest; in *Egbert v. Greenwall, supra*, an action for criminal conversation; in *Tate v. Penne*, 7 Mart. N. S. (La.) 548, suit for the possession of slaves; in *Cross v. Cross*, 3 Paige (N. Y.) 139 (23 Am. Dec. 778), passing on the custody of children in a suit for divorce; in *Chamberlain v. People*, 23 N. Y. 85 (80 Am. Dec. 255), an indictment for perjury committed in a suit for divorce on the ground of adultery.   In *Corson v. Corson*, 44 N. H. 587, such evidence was held not to be admissible in a suit for divorce on the ground of adultery.   It is safe to say, then, in the light of authority, that neither the declarations nor the testimony

of either spouse may be received in evidence to prove access or nonaccess to the other. This does not mean that a spouse may not give testimony having a tendency to show the offspring to have been begotten by a third person, and under the decisions to which attention has been directed, the wife's evidence of illicit connection with any person other than her husband and her admissions concerning the same are held to be admissible. That which in the interest of society and common decency is excluded is the testimony or declarations of either spouse of access or nonaccess as bearing on the inquiry whether the husband and wife have had sexual intercourse during the period involved in controversy. This suit for divorce is based on the charge that defendant, when married, was with child by another than plaintiff, and, as it was born in wedlock, the declarations of defendant, contained in the affidavit, tending to show nonaccess of her husband during the period when, in the course of nature, it must have been conceived, were inadmissible, and on objection thereto should have been excluded. If, however, the objection may not have been sufficiently specific, a point not raised in argument, her statements with reference to nonaccess are entirely uncorroborated, which, according to the early English authorities ruling that such evidence might be received, is held to be essential. *Rex v. Reading,* Lee Teup Hardwick, 79; *Rex v. Rook,* 1 Wils. 340; *Rex v. Luffe,* 8 East, 193. See 3 Wigmore, Ev., sections 20, 63, and notes. So that in any event the petition should have been dismissed.— *Reversed.*