## MONTAGUE v. MONTAGUE.

Sess. Laws 1907, c. 132, § 1, requiring plaintiff in divorce to have been an actual resident of the state for one year, and of the county where the action is brought for three months, next preceding the commencement of the action, does not apply to an action for annulment of a marriage, and a residence of one year is not a prerequisite to the maintenance thereof.

(Opinion filed, May 24, 1910.)

Appeal from Circuit Court, Lincoln County. Hon. JOSEPH W. JONES, Judge.

Action by George H. Montague against Inez May Montague. From an order sustaining a demurrer to the complaint, plaintiff appeals. Reversed.

*Joseph Mitchell Donovan,* for appellant. *William G. Porter,* for respondent.

SMITH, J. Plaintiff brought an action in the circuit court of Lincoln county for annulment of marriage. The complaint states in substance, that plaintiff had been a bona fide resident in good faith of the state of South Dakota for a period of more than six months next preceding the commencement of the action, and at the time of the commencement thereof was a citizen and elector of the state of South Dakota; that plaintiff and defendant

entered into a form of marriage in the state of New York on the 17th day of May, 1907; that the marriage was procured by fraud of the defendant, and was voidable under the laws of New York, and is likewise voidable under the laws of the state of South Dakota; that plaintiff would not have entered into said marriage but for the fraudulent representations of defendant, and that the parties have not lived together since the discovery of the fraud; that four years have not elapsed since the discovery of the fraud. Defendant demurred to the complaint on the ground that the complaint shows that the plaintiff had not been a resident of the state of South Dakota for one year and of the county of Lincoln for three months prior to the commencement of the action. The contention of the defendant is that chapter 132, Laws S. D. 1907, relating to residence in divorce actions, applies to a suit to annul marriage. The court having sustained the demurrer, plaintiff brings the action to this court for review.

The question presented by the record is whether a residence of one year in the state is a jurisdictional prerequisite to maintaining an action for the annulment of a marriage. No other question is presented. Section 1, chapter 132, Sess. Laws 1907, provides: "Section 1. Plaintiff in an action for a divorce must have been an actual resident in good faith of this state for one year, and of the county where such action is commenced for three months, next preceding the commencement of said action except as herein otherwise provided." The other provisions of the statute have no relevancy to the question presented here. There is no statute of this state specifically prescribing a period of residence in actions for annulment of marriage. The marriage contract and the annulment of marriage are treated under article 1 of part 3 of the Civil Code, while divorce is treated in article 2 of the same chapter as a distinct action. The fundamental distinction between the annulment of a marriage contract and its dissolution by divorce is very well stated in section 556, Nelson on Divorce and Separation: "The term 'divorce' in its accurate sense denotes dissolution or suspension by law of the marital relation. As a legal term and unaided by context it means a dissolution of the

bonds of matrimony. When a marriage is dissolved, the action of the court proceeds upon proof that a valid marriage existed and created rights and liabilities. The decree of divorce usually proceeds to make a full adjustment of these liabilities. The decree of annulment declares, in effect, that no valid marriage ever existed, and restores the parties to their former position and relieves them from civil and criminal liabilities. The decree of divorce operates from the time it is rendered, but the nullity decree relates back to the time the void marriage was entered into." Under the provisions of section 61, Civ. Code, a marriage may be annulled by an action in the circuit court "for any of the following causes existing at the time of the marriage." The statute then specifies six separate grounds upon which a marriage may be annulled, each of which relates to causes existing at or prior to the time of the marriage. Section 67, of the Civil Code provides that divorces may be granted "for any of the following causes," and then specifies six grounds for divorce, each of which relates to the conduct of the parties subsequent to the marriage contract. Section 62 of the Civil Code prescribes a distinct period of limitation within which an action for annulment must be commenced, and prescribes a distinct and different period of limitation for each of the six grounds or causes for annulment. The only limitation as to the time within which actions for divorce may be begun is found in section 84 of the Civil Code, which provides that a divorce must be denied when there is an unreasonable lapse of time before commencement of the action, defines what is an unreasonable lapse of time, and further provides that the presumption arising from lapse of time may be rebutted by showing reasonable grounds for the delay in commencing the action. Section 85 provides: "There is no limitation of time for commencing actions for divorce, except such as are contained in the foregoing section 84." Section 29 of the Code of Civil Procedure provides: "The circuit court possesses chancery as well as common-law jurisdiction." In 26 Cyc. p. 908, par. 2, it is said: "A court of chancery, in the exercise of its ordinary powers and jurisdiction, and without the authority of statute, may take jurisdiction of a

suit to annul a marriage where the cause alleged is one of the well known grounds on which equity gives relief in cases of contract, such as fraud, error, duress or mental incapacity." The grounds upon which a marriage may be annulled in a court of chancery are clearly defined by text-writers and the decisions of the various chancery courts, and an examination of the decisions and rules thus recognized makes it entirely clear that the provisions of section 61 of the Civil Code, defining the causes for annulment of marriage, constitute simply a very clear, full, and exact codification of the rules established by the decisions of the chancery courts. From these decisions it is apparent that actions for the annulment of a marriage, and actions for divorce, are entirely separate and distinct in their grounds, object, and effect. A valid marriage creates a marriage "status," but a marriage which is void by reason of any of the matters specified as grounds for annulments in section 61 logically does not create the marriage "status."

In the case of Avakian v. Avakian, 69 N. J. Eq. 89, 60 Atl. 521, an action to annul a marriage for duress, the court says: "But another important consideration intervenes. The jurisdiction of this court over the subject-matter of this cause is not based upon or derived from the divorce statute. Hence it is not limited by any of the terms of that statute as to residence, etc. It is based on the original, inherent, and general jurisdiction of this court over questions arising out of contracts inter parties, and is exercised over contracts of marriage in which is found some vice inherent in their origin, precisely as in cases arising out of ordinary contract. * * * I shall add the suggestion that this action is not properly classified as a suit for a divorce, which is almost universally based upon some cause of action arising after the marriage, and which dissolves a valid marriage." In 1907 the New Jersey Legislature passed an act requiring a residence in the state for one year in actions for annulment, while in divorce actions it requires a residence of two years. In some states as in Minnesota and Washington the statutes regulating divorce and annulment actions are contained in a single act. The statute in

Washington (Rem., & Bal. Codes & St. § 984) provides that: "In divorce and nullity suits, the complainant must reside in the state for one year prior to suit." It is apparent, therefore, that the ruling in Piper v. Piper, 46 Wash. 671, 91 Pac. 189, is not pertinent to the question before us. The same statutory rule exists in West Virginia. Martin v. Martin, 54 W. Va. 301, 46 S. E. 120. In South Carolina there is no statutory provision whatever authorizing divorces, but the chancery courts of that state exercise jurisdiction to annul marriage as in other chancery or equity cases. Mattison v. Mattison, 1 Strob. Eq. 387, 47 Am. Dec. 541. See Dawles v. Dawles, 18 Ont. 296.

In view of these well-settled rules, in the light of which the act of the legislative assembly must be construed, and which act in its terms applies only to actions for divorce, we are clearly of opinion that the act was not intended to, and does not apply to actions for annulment of marriage. The order and judgment of the trial court are reversed.