JOHN A. GILBERT et al., Appellants, v. JACOB RUGGLES et al.,
Appellees.

**DEEDS:** Undue Influence—Performance of Legal Obligation.   Un-
1   due influence becomes quite immaterial when it is made to
appear that the alleged victim of such influence did nothing
more nor less than he was under legal obligation to do.

**DEEDS:** Undue Influence—Gift to Illegitimate Child.   Grantor's
2   deed of gift to his illegitimate minor child, *nothing else appearing*, may be justified on the legal basis that grantor was
simply discharging a legal obligation.

**BASTARDS:** Child Born in Lawful Wedlock.   Principle recognized
3   that children born in lawful wedlock are conclusively presumed
to be legitimate.

*Appeal from Jasper District Court.*—HENRY F. WAGNER,
Judge.

JULY 6, 1920.

SUIT in equity to set aside certain deeds of real estate. The plaintiffs are the heirs at law of the grantor of such deeds. The grounds of attack were:   (1) That the grantor lacked mental capacity to make the same; (2) that the execution of the same by the grantor was procured by fraud and undue influence.  After a trial upon the merits, there was a decree dismissing the petition.   The plaintiffs appeal.—*Affirmed.*

*E. M. S. McLaughlin* and *Mulvaney & Mulvaney,* for appellants.

*E. J. Salmon* and *McCoy & McCoy,* for appellees.

EVANS, J.—The plaintiffs are heirs at law of George W. Gilbert, late of Jasper County. Some of their coheirs are named as defendants. The defendants Jacob and Amanda

1. DEEDS: undue influence; performance of legal obligation.
Ruggles are grantees in one of the deeds under attack. The other Ruggles defendants are the four minor children of Jacob and Amanda, and are the grantees in the other deed under attack.

George W. Gilbert was a long-time resident of Jasper County. In his more than 50 years of residence, he had acquired considerable property, comprising several hundred acres of land and city property. His family consisted of his wife and seven children. His wife obtained a divorce from him in December, 1904, on the ground of desertion, alleged to have occurred in 1902. Jacob and Amanda Ruggles are husband and wife. Jacob first became a hired man to Gilbert in 1891, for a period of about one year. Some time later, and about the year 1896, he again entered the employ of Gilbert, and, except for a break of one year, continued in such employment until after the events herein involved. During such employment, he occupied the house on one of Gilbert's farms. After the divorce, Gilbert boarded and lodged at the Ruggles home, and so continued until shortly before his death. Gilbert's occupation consisted in the operation of his farms and in the management of a certain mill property in which he was a part owner. The record shows without dispute that, at all times prior to 1910, he had been prudent and successful in all of his business affairs.

The complaint of plaintiffs is that, on April 8, 1910, he conveyed to Jacob and Amanda Ruggles, without consideration, 100 acres of land; and that, afterwards, on April 11,

1914, he conveyed to the four youngest children of Jacob and Amanda Ruggles 100 acres of land, without consideration. It is contended that the property thus conveyed was of the value of $70,000, and that the conveyance thereof was improvident on Gilbert's part, and the result of mental incapacity and undue influence.

At the time of the divorce, Gilbert conveyed to his wife $50,000 worth of property, including the home farm of 240 acres. The divorced wife died in 1906, intestate, and her children took her estate. Upon their application, the father was appointed administrator, and as such administered and distributed the estate among the children. He died April 6, 1918, leaving an estate of about $150,000. No other improvident act is charged against him, either in pleading or evidence, than the two conveyances already referred to.

The two conveyances complained of were not contemporaneous. It is necessary, therefore, to consider them separately.

I. We turn first to a consideration of the conveyance to Jacob and Amanda Ruggles of April 8, 1910. The question of Gilbert's mental condition will be considered in the next paragraph, in connection with the conveyance of 1914. We shall not dwell upon it at this point, further than to say that our finding on this question, as of this date, is adverse to the plaintiffs. The immediate facts attending the making of the conveyance of 1910 are of such a nature as to fully refute the complaint of plaintiffs in relation thereto.

It is made to appear that, in May, 1914, Mrs. Anderson, one of the daughters of Gilbert, and now one of the plaintiffs, began a proceeding in the district court of Jasper County for the appointment of a guardian for her father, on the ground of mental incapacity and that he was squandering his property. These grounds were predicated upon the two conveyances now under attack. A temporary guardian was appointed ex parte, which appointment was afterwards set aside, upon motion. While this proceeding was

pending, and in February and March, 1915, the deposition of Gilbert was taken. He was at that time suffering from an affection of his throat, and testified under some physical disability on account thereof. But an exhaustive examination was had, consisting of more than 300 interrogatories. The facts pertaining to this conveyance and the reasons therefor were fully gone into and stated by the witness. Such deposition was introduced in evidence herein by the defendants. From such deposition it appeared that the 100 acres conveyed to Jacob and Amanda Ruggles constituted one half of a 200-acre farm, purchased jointly by Gilbert and Jacob Ruggles in October, 1909, from W. E. Kingdom. The farm was purchased for $124 an acre, and settlement therefor was to be made on March 1st. The settlement was made on March 1st by Gilbert, and a deed taken from Kingdom to him. Shortly thereafter, Ruggles settled with him for his share of the purchase, and Gilbert made the conveyance, pursuant to the original purchase. That the original purchase was a joint one is undisputed in the evidence. The statement of Gilbert to that effect is also corroborated by the testimony of other witnesses who had to do with the transaction, and by newspaper publication of the fact at the time. Indeed, this fact does not appear to be controverted in the argument of appellants in this court. But it is contended that no consideration was, in fact, ever paid by Jacob or Amanda Ruggles for the one half thus conveyed to them. This contention is qualified with the further contention that not more than $2,000 of the consideration was paid. The deed recited a consideration paid of $12,400. This was exactly one half of the purchase price of the whole farm. If the amount thus stated was not actually paid, Gilbert had, nevertheless, a good cause of action therefor. The agreement to pay was itself sufficient consideration to support the deed as such. The remedy in such case was to enforce the payment. In an equitable sense the title of Ruggles had its origin, not in the deed of April 8, 1910, but in the contract of purchase from Kingdom, in October, 1909. If it be true, therefore, that the

grantees paid only a part of the purchase price due from them, it furnishes no basis for an action to set aside the deed. We have no occasion, therefore, to consider the question of undue influence in this connection. The only result of undue influence, if any, was to induce Gilbert to join in this contract of purchase of the farm. The contract of purchase was an advantageous one, and he was not hurt by it. The conveyance afterwards made by him was one which he was under legal duty to make, and no influence could make such duty either less or more.

The large valuation of $70,000 which plaintiffs fix upon this farm is predicated upon present values, and not upon its value in 1910. The price actually paid for it at that time was $24,800. Gilbert exacted from the grantees neither more nor less than one half of such purchase price. We find, therefore, that, so far as obtaining the title from Gilbert for one half of such farm is concerned, there was no room for the operation of undue influence.

II. The conveyance of April 11, 1914, purports to have been made for the consideration of $1.00 and love and affection. The grantees were the four youngest children of Jacob and Amanda Ruggles, ranging in age from one year up. They were all minors. The conveyance reserved to the grantor a life estate. The 100 acres conveyed thereby was the other one half of the Kingdom farm. After the conveyance of April, 1910, the Ruggles moved upon this farm, and Gilbert made his home there with them. The effect of the conveyance was ultimately to convey the entire farm to the Ruggles family.

In the deposition of Gilbert hereinbefore referred to, he was fully interrogated concerning this transaction. He emphatically re-affirmed it as a gift, and stated: "I put it just where I wanted to." There is no question of the character of this conveyance as being one of gift. The question of mental incapacity or undue influence has controlling importance. So far as the question of mental incapacity goes, the principal evidence is directed to the period of Gilbert's last illness, which covered about six

months previous to his. death. At the time the deposition
of Gilbert was taken, in 1915, he was suffering from an
affection of the throat, which was more or less paralyzed,
and this required that his nourishment be taken through
a tube. He was attending to his own business affairs, and
continued to so attend to them until a few months before
his death. His deposition discloses complete familiarity
with all his business affairs. He contested the guardian-
ship proceeding successfully, in that, upon the eve of trial,
it was dismissed by the plaintiffs.

There was evidence on the part of plaintiffs which fairly
established the fact that the underlying cause of the de-
fendant's throat trouble and of his fatal illness was syphi-
litic. The contention of mental incapacity is founded
largely upon this fact. It is indeed an important fact, but
does not dispense with the necessity of proving mental in-
capacity in fact on the part of the patient. The evidence
is very slight indeed of any abnormal mental condition on
the part of Gilbert, prior to April 11, 1914. The parties in
interest, as witnesses, testified to circumstances in April,
1914, which might be regarded as tending to prove such
fact. If such evidence were to be deemed literally true,
we could not deem it sufficient, as proof of mental incapa-
city. Making due allowance for the interest of the wit-
nesses, and for the inaccuracy of the memory as to details,
we are very clear that little weight can be given to it.
Many disinterested witnesses were examined on both sides.
Among these we find none who transacted any business with
Gilbert up to the time of his last illness who discovered
any lack of normal mentality.

Upon the whole record, we are clear that the plaintiffs
have failed upon the issue of mental incapacity

Was the conveyance obtained by undue influence? It
is not claimed that the infant grantees exercised such in-
fluence. The charge of undue influence is predicated upon
alleged adulterous relations between Gilbert
and Mrs. Ruggles. Such is the skeleton in
this closet. The only direct evidence of that
fact is by one of the sons, who testified to

2. DEEDS: un-
due influ-
ence: gift
to illegiti-
mate child.

his personal observations of such relations on an occasion more than 20 years prior to Gilbert's death, and prior in time to the divorce. Other evidence in support of this charge is circumstantial, and is given in the main by the parties interested. Proof of reputation also was resorted to. Such proof by plaintiffs assailed the general moral character of Mrs. Ruggles. It also dealt with the reputed paternity of her younger children, who are the grantees in the conveyance under consideration. Such proofs were not left uncontradicted by the defendants. Gilbert was 73 years of age at the time of his death. Mrs Ruggles was nearly 25 years younger. She was the mother of 8 or 9 children, all born in lawful wedlock. So far as appears, she lived happily with her husband at all times. If the evidence relied on in support of the charge be deemed true, the husband could not have been ignorant of the illicit relation. Needless to say that the facts thus stated tend, of themselves, to rebut strongly such charge, and that they are not to be lightly brushed away. Needless to say, also, that the fact of guilt should not be found, except upon most convincing evidence. The evidence of the son is indeed direct, but, in the light of the whole record, it is not convincing. We are sure that, upon this record, we should not be justified in finding that illicit relations existed between these parties.

3. BASTARDS: child born in lawful wedlock.

Needless, too, to say that the proof of reputed paternity of these children was worthless, as evidence of the fact. The child born in lawful wedlock is protected by the conclusive presumption of the law as to his paternity. To defeat these grantees upon the ground of the criminality of their paternity would be to deprive them of such legal presumption. Moreover, if there were no presumption, and if the bastardy of these children were fully proved, what then? Accepting the fact as explanatory of the gift, yet the gift itself might be deemed only a moderate discharge of a legal obligation, and a recognition of a moral responsibility which could never be fully met or expiated.

The sum of the whole case is that this decedent presented 100 acres of land to the children of the family in which he had lived for 14 years. He had 360 acres more for his own children, and other property of large value, as already indicated. Was the fact that he made such gift evidence of improvidence on his part, and did it indicate failing mental powers? We cannot say so. We reach the conclusion, therefore, that the case was rightly decided in the trial court, and the decree entered there is—*Affirmed.*

WEAVER, C. J., PRESTON and SALINGER, JJ., concur.