RILEY, Plaintiff in error, vs. THE STATE, Defendant in error.

*April 11—May 12, 1925.*

*Bastards: Child born in lawful wedlock: Presumption as to legitimacy: How rebutted: Degree of proof required: Burden of proof: Instructions.*

1. The presumption that a child born of a married woman is legitimate may be rebutted by evidence that the husband was (1) incompetent; (2) entirely absent, so as to have no communication of any kind with the mother; (3) entirely absent at a period when the child must have been begotten; or (4) only present under such circumstances as afford clear and satisfactory proof that there was no sexual intercourse. p. 159.

2. In a prosecution for bastardy, the prosecutrix being a married woman, testimony of the sister of the prosecutrix, not based on personal knowledge but merely on the assumption that the prosecutrix would have told her if her husband visited her, is not such clear and satisfactory proof of the non-access of the husband as the law requires to rebut the presumption of legitimacy. p. 160.

3. A strong degree of proof is required to bastardize a child born in lawful wedlock. p. 159.
4. An instruction that the presumption of innocence attends a defendant throughout the whole trial and prevails "until overcome by proof of guilt beyond a reasonable doubt," was erroneous, and, in view of the unsatisfactory proof of non-access of the husband of the prosecutrix, was reversible error. p. 160.

ERROR to review a judgment of the circuit court for Pierce county: GEORGE THOMPSON, Circuit Judge. *Reversed.*

*W. G. Haddow* of Ellsworth, for the plaintiff in error.

For the defendant in error there was a brief by *Kenneth S. White,* district attorney of Pierce county, the *Attorney General,* and *J. E. Messerschmidt,* assistant attorney general, and oral argument by *Mr. White* and *Mr. Messerschmidt.*

JONES, J. This is a prosecution for bastardy. The prosecutrix was married to Julius Rinke in 1918. She only lived with him a short time. Before April, 1923, she had been living in Minnesota, but about April 6, 1923, she came to Prescott, Wisconsin, and commenced living as a housekeeper in the home of the Riley brothers, Anthony Riley and the plaintiff in error, hereinafter called the defendant. She remained there until December 29, 1923. According to her testimony numerous acts of sexual intercourse took place with the defendant from July until she went away to Michigan, and she testified that a child was born to her at Manistique, Michigan, May 2, 1924. The defendant denied that he ever had sexual intercourse with Mrs. Rinke, and on cross-examination of the prosecutrix defendant's counsel brought out facts which he claims discredit her statements, but it is not necessary to discuss that testimony. There was proof of the good character of the defendant.

The most important assignments of error were that there was not sufficient evidence of non-access of the husband and that there were errors in the charge of the court. The only

proof of such non-access was the testimony of Mrs. William-
son, the sister of Mrs. Rinke, who was working in the Egers
home, about a mile distant from the Riley house, during the
summer of 1923.   She testified that she and her sister visited
back and forth during this time ; that they visited every other
day and sometimes twice a week ; that she could see the Riley
home from the Egers house.   She was quite positive in her
statement that Rinke could not have been with her sister
during the summer without her knowledge, but she repeat-
edly said, "he could not have been there and I not know it
because she would have told me he was."   Again she testi-
fied: "So far as my personal knowledge is concerned, I am
ready to admit that Julius Rinke might have been there ex-
cept what she told me."   For the defense there was evidence
contradicting her statements as to the frequency of the visits
and the possibility of seeing the Riley house from the Egers
home.

It is an ancient and one of the strongest presumptions of
the common law that a child born in lawful wedlock is
legitimate.   It was a presumption so favored that the testi-
mony of the father or mother could not be received to bas-
tardize the issue born after marriage.   As early as 1777
Lord Mansfield said:

"As to the time of the birth, the father and mother are
the most proper witnesses to prove it.   But it is a rule,
founded in decency, morality, and policy, that they shall not
be permitted to say after marriage that they have had no
connection, and therefore that the offspring is spurious;
more especially the mother, who is the offending party."
*Goodright ex dem. Stevens v. Moss,* 2 Cowper's Rep. 591.

This presumption of legitimacy in such cases has ever
since been generally recognized by the courts in England
and America, but there has been much discussion of the
manner in which it may be rebutted and of the question
whether the proof should show that it is impossible or only
improbable that the husband could be the father of the child.

At one time it was held that if the husband was within the four seas at any time during the pregnancy of the wife, the presumption in favor of legitimacy was conclusive unless the husband was impotent. But this doctrine was long ago modified, and the rule which has come to prevail in this state and quite generally was thus stated in the case of *Shuman v. Shuman,* 83 Wis. 250, 53 N. W. 455:

"A child born of a married woman is, in the first instance, presumed to be legitimate. The presumption thus established by law is not to be rebutted by circumstances which only create doubt and suspicion, but it may be wholly removed by proper and sufficient evidence showing that the husband was (1) incompetent; (2) entirely absent, so as to have no intercourse or communication of any kind with the mother; (3) entirely absent at the period during which the child must, in the course of nature, have been begotten; or (4) only present under such circumstances as afford clear and satisfactory proof that there was no sexual intercourse."

In *Mink v. State,* 60 Wis. 583, 19 N. W. 445, it was said:

"The presumption of the law is in such a case that the husband had access to the wife, and this presumption must be overcome by the clearest evidence that it was impossible for him, by reason of impotency or imbecility, or entire absence from the place where the wife was during such time, to have had access to the wife, or to be the father of the child."

And in *Watts v. Owens,* 62 Wis. 512, 22 N. W. 720, language was used as follows: "To bastardize and disinherit a child born in lawful wedlock, the most clear and conclusive evidence of non-access is required."

It is clear that it is the law in this state, based upon grounds of public policy as well as that of the protection of the good name of children born under such circumstances, that a strong degree of proof is required to bastardize children born in wedlock. Confessedly the positive statements of Mrs. Williamson had little foundation in personal knowledge. She had very strong opinions on the subject, but the

foundation for those opinions was the belief that if Rinke had been present with her sister she would have told the witness. It seems quite remarkable that no other evidence was produced to show the absence of the husband during the time in which the child was begotten, and we are of the opinion that no such clear and satisfactory proof of non-access as the law requires was given.

It is earnestly argued by counsel for the defendant that there was error in the instructions on the subject of non-access. On this question the charge consisted of unnecessary repetition and was more complicated than necessary. The law on the subject could have been stated in less than half the words which were used and thus have been made more easy of comprehension. Since instructions of this kind show an earnest desire to present the case fully and fairly to the jury, perhaps they should not be severely criticised, and it must be admitted that the same kind of prolixity is sometimes found in the printed decisions of courts of the last resort. However, we do not find that the rule of law on the subject of non-access was incorrectly stated.

But there was another instruction of which this cannot be said. The jury were told, "This presumption of innocence attends the defendant throughout the whole trial and prevails until overcome by proof of guilt beyond a reasonable doubt." This form of instruction has several times been held erroneous, and the reasons are stated in *Emery v. State,* 101 Wis. 627, 78 N. W. 145, and *Roen v. State,* 182 Wis. 515, 196 N. W. 825. If the evidence on the subject of non-access had been clear and satisfactory, perhaps this charge would not be held reversible error. But in view of the very unsatisfactory proof on this subject and the error in the instruction, we think that the defendant is entitled to a new trial.

*By the Court.*—Judgment reversed. The cause is remanded with directions to grant a new trial.