RICK RYKE, Guardian, Appellee, v. LAURA REAM et al., Appellants.

No. 40591.

January 13, 1931.

Rehearing Denied April 10, 1931.

Theo R. Wilkie and McCoy & McCoy, for appellants.

Devitt, Eichhorn & Devitt, for defendant, Rose Maud Cronkhite.

Thomas J. Bray, for appellee.

Morling, J.—Ella Wilson, the mother of the plaintiff minor, Melvin Eugene, and Dawson Hammons intermarried in June, 1911. Melvin Eugene was born some four months thereafter, viz., October 12, 1911. Dawson and Ella Hammons lived together as husband and wife two years and nine months after their marriage. It is undisputed that during that time after the birth of Melvin Dawson Hammons habitually recognized Melvin Eugene as his son. The evidence is convincing, with no competent evidence to the contrary, that Melvin Eugene is in fact the son of Dawson Hammons. The mother of the minor testifies that she left Dawson Hammons in March, 1914, and took the boy with her; that about January 1, 1915, Dawson Hammons told her that he was going to get a divorce on the

ground of desertion and asked her to sign a paper, which she did. This paper purports to be an original notice in the suit of Dawson Hammons against Ella May Hammons, which states: "that on or before the —— day of ————, 1915, the petition of Dawson Hammons will be filed in the office of the clerk of the District Court of the State of Iowa in and for Mahaska county, claiming of you a divorce. For particulars see petition to be filed." The grounds for divorce are not stated. The notice calls for appearance before noon of the second day of the February, 1915, term. The acceptance of service reads: "I hereby accept service, waive time, and enter my appearance in the above entitled cause." The petition for divorce was filed March 10, 1915, and alleged:

"3. That plaintiff and defendant were married in June, 1911, and lived together until 1914; and after the marriage a child was born, and that the defendant has the custody of said child.

"4. That since the marriage of plaintiff and defendant the defendant has committed adultery at diverse [divers] times and with diverse [divers] parties.

"5. That at the time of the marriage of plaintiff and defendant said defendant was pregnant, and was delivered of a child as above set forth.

"That the defendant accused the plaintiff of being the father of said child and threatened to prosecute him criminally under the statute, and that the plaintiff, believing the claim to be true married her, and they lived together sometime until after the child was born, when the plaintiff learned that said child was not the child of plaintiff but was the child of one Harry Frazier.

"That when plaintiff learned said fact and of said adultery he separated from said defendant and has not lived with her since that time.

"6. Wherefore, plaintiff asks that he and the defendant be divorced; that the bonds of matrimony heretofore existing between plaintiff and defendant be forever dissolved and that they go forth as if no marriage had ever taken place; and that plaintiff be allowed to marry after said divorce, if he so desires; and for such other and further relief as may be just and equitable in the premises; and for costs of this action."

On March 23, 1915, decree was entered finding that defendant had been served with due and timely notice and failed to enter appearance. The court "finds the allegations of plaintiff's petition to be true and that before the marriage of plaintiff and defendant the defendant was pregnant by another man other than the plaintiff, such as to give the plaintiff grounds for divorce. That defendant is decreed to have the care, custody and control of the child. It is further ordered and decreed that the plaintiff pay the costs of this action taxed at $———. It is therefore ordered and decreed that the plaintiff and defendant be and are hereby forever divorced, and that the bonds of matrimony heretofore existing between plaintiff and defendant be forever dissolved and held for naught, and that they go forth as though no marriage had ever occurred."

The mother testifies that she believed Dawson when he told her he was going to get a divorce on the ground of desertion; that he did not say he was getting a divorce because she was pregnant by another man at the time of marriage and that she had no knowledge that he was making such claim until two or three years before the present trial, and if she had had such knowledge she would have defended.

Notwithstanding the fact that Melvin's birth occurred so soon after the marriage of his parents as to make it certain that he was begotten out of wedlock the presumption of paternity, and of his right to inherit, is the same as if he had been begotten during wedlock. Wallace v. Wallace, 137 Iowa 37; 7 C. J. 940.

We pass without deciding the question whether the decree of divorce was valid as between the parties to it. Defendants contend that that decree established the pregnancy of the wife by another man at the time of the marriage. Defendants urge that the divorce decree was in rem, that it operated to annul the marriage ab initio and thereby of its own force to bastardize the child. Neither the original notice nor the petition asserted any claim for annulment. The claim was for a divorce. The ground alleged was statutory cause for divorce (Code, 1897, Section 3175), not for annulment (Id., Section 3182), though we do not decide that the husband might not have sought annulment. See Wallace v. Wallace, 137 Iowa 37. The petition alleged that the parties were married and that since the marriage

the defendant had committed adultery. It did not allege that the marriage was void. . It asked that the parties "be divorced; that the bonds of matrimony heretofore existing between plaintiff and defendant be forever dissolved." It recognized the marriage and asked dissolution. The decree is for divorce "and that the bonds of matrimony heretofore existing between plaintiff and defendant be forever dissolved." It looks to the future, not to the past. The parties were before the court. The decree purported to be against the person though it adjudicated their status thenceforth as unmarried persons. The decree was not in rem. Everett v. Supervisors, 93 Iowa 721, 725; Kean v. Rogers, 118 N. W. 515, 517; (reversed on other grounds, 123 N. W. 754, 146 Iowa 559); Farrell v. St. Paul (Minn.), 64 N. W. 809, though it was quasi in rem. Montague v. Montague, 127 N. W. 639, 25 S. D. 471, 30 L. R. A. (N. S.) 745; Millar v. Millar, 167 Pac. 394, 175 Cal. 797, L. R. A. 1918B 415; 1 C. J. 1041; 34 C. J. 1171, 1175; 19 C. J. 179; 33 C. J. 1063. Melvin Eugene was not a party to that suit. No issue was tendered as to his status. Plaintiff in the divorce action merely alleged that he "learned that said child was not the child of the plaintiff." When the divorce suit was brought Melvin Eugene was three or four years old, as much a person, as much separate from his mother, as much the possessor of sacred personal rights as if he were of full age. His status and his personal rights then were not those of a bastard but of the legitimate child of Dawson Hammons entitled to a child's right to support from his father and to a prospective right to inherit through his father after his father's death. The mother did not and could not represent that status. That status as a res was not before the court. Without the presence of Melvin Eugene through due service of process upon him, and without framing an issue involving his status the decree, even though it had purported to adjudicate his status, would obviously as to him have been an utter nullity. See Schlenker v. Ferdon (Ohio), 153 N. E. 113; Forney's Estate, 43 Nev. 227, 184 Pac. 206, 186 Pac. 678.

The iniquity of the defendants' contention is illustrated by the undisputed evidence that the decree which they set up as conclusive upon the boy was obtained through a trick, if not in the eyes of the law a fraud perpetrated upon the mother.

On this record the plaintiff minor is undisputably the legitimate son of Dawson Hammons. Dawson Hammons left no other issue. Plaintiff, therefore, inherits the interest in the estate in controversy which Dawson Hammons would have inherited if living.—Affirmed.

EVANS, DE GRAFF, ALBERT, KINDIG and GRIMM, JJ., concur.

WAGNER, J., not participating.