Amos B. Craven et al., Appellees, v. Harold N. Selway et al., Defendants, Appellees; Ralph E. Stecher et al., Defendants, Appellants; Ralph E. Stecher, Cross-petitioner, Appellant.

No. 41287.

February 14, 1933.

Rehearing Denied June 21, 1933.

Kelly, Shuttleworth & McManus, and Thomas J. Bray, for appellants.

Cross & Hamill, O. P. Myers, and Fred Morgan, and Dwight G. McCarty, for appellees.

KINDIG, C. J.—Clarence W. Craven, a resident of Jasper county, died intestate January 30, 1930. At the time of his death, Craven owned the 1,500 acres of real estate involved in this partition proceeding, and other property. He was a single man, never having married, and left surviving only collateral heirs, unless the defendant-appellant, Ralph E. Stecher, is his illegitimate son and direct heir.

On February 5, 1930, the plaintiffs-appellees, as collateral heirs of the decedent, commenced this action in the Jasper county district court to partition the above-named land as against the defendants- appellees, also collateral heirs of the decedent. Thereupon the appellant, having made claim to the real estate on the theory that he was the illegitimate son of Clarence W. Craven, deceased, the plaintiffs-appellees amended their petition making the said Stecher a party to the proceeding, and asking that title in and to the said real estate be quieted in the collateral heirs against him. Then the defendants-appellees joined with the plaintiffs-appellees in the action to quiet title against the appellant. A cross-petition was then filed by the appellant in which he claimed all the property belonging to Clarence W. Craven, deceased. To this cross-petition the appellees fully answered.

It is admitted by the appellant that the appellees are the collateral heirs of Clarence W. Craven, deceased. So, too, it is con-

ceded by the appellant that the appellees are entitled to a partition of the real estate, unless he is the illegitimate son of the decedent. Furthermore, it is conceded by the appellant that the appellees are entitled to the property of Clarence W. Craven, deceased, if he is not the decedent's son.

The district court found that the appellant is not the illegitimate son of Clarence W. Craven, deceased, and that the appellees are the decedent's only heirs. Accordingly title to the real estate was quieted in appellees, and partition thereof allowed as prayed. From the judgment and decree thus entered, the appellant appeals.

I. At the trial in the district court, the appellant offered in evidence the testimony of many witnesses concerning the declarations of the appellant's mother and Clarence W. Craven regarding the appellant's paternity. Because of the character of the witnesses, the discrepancies in their testimony, and other facts and circumstances, this evidence is of doubtful persuasive value. But, under the circumstances of this record, it is not necessary to pass upon the truthfulness of this testimony. When the appellant was born, his mother was lawfully wedded to, and living with, Joe Stecher. In March, 1891, Joe Stecher and the appellant's mother, then Rosa Lanz, were lawfully married. Joe Stecher, at the time, was living in the neighborhood of Muscatine. Following their marriage, Joe Stecher and appellant's mother lived on a farm two miles north of Kellogg, in Jasper county.

During their married life, Mr. and Mrs. Stecher were hard working farmers, and apparently lived happily together until April, 1922, when Mrs. Stecher died. According to the record, Joe Stecher is still living. It appears, from the foregoing facts, that Rosa and Joe Stecher lived together as husband and wife for approximately thirty-one years. Their marriage relationship was broken, not by discord, but by death.

Not only was the appellant born to Mrs. Stecher while she thus lived and co-habited with her husband, Joe Stecher, but likewise three other children were born to this union. These children, in the order of their birth, were as follows: Mabel Stecher, now Mabel Freese, born January 4, 1893; Barney Stecher, born in 1895; Ralph E. Stecher, the appellant, born May 1, 1899, and Leonard Stecher, born October 14, 1910. The appellant, therefore, is the third child. He was born after his mother had been married to Joe Stecher a little more than eight years. A sister and a brother had

been born before him. When the appellant was, as well as when the other children were, born, Joe and Rosa Stecher were living together on the farm as husband and wife. They slept in the same bedroom, and, so far as appears from the record, they lived together as husband and wife. Not only was the appellant born as a child of Rosa Stecher when she and Joe Stecher were husband and wife; but the claimant received the name of Stecher and lived under the roof of Joe and Rosa Stecher, and ate at their table until he became of age and went out into the world for himself. Because the appellant was born when Rosa and Joe Stecher were husband and wife, there is a presumption of law which excludes much of the aforesaid evidence offered. In this case the burden of proof was upon the appellant to establish: First, his illegitimacy (Warren v. Warren, 41 Times L. Rep. 599; Watson v. Richardson, 110 Iowa 673, 80 N. W. 407); and, second, that Clarence W. Craven was his illegitimate father and that such father, during his lifetime, recognized the appellant as his illegitimate child. Such recognition, if not in writing, must have been general and notorious. Section 12031 of the 1931 Code.

■ Owing to the fact that the appellant has failed to prove the first fact required of him, it will not be necessary to give consideration to the second proposition. Within the rule before announced, the appellant has not proven his illegitimacy. As before said, there is a presumption involved which the appellant has not overcome by competent testimony. When a child is born in wedlock, the law presumes legitimacy. Wallace v. Wallace, 137 Iowa 37, 114 N. W. 527, 14 L. R. A. (N. S.) 544, 126 Am. St. Rep. 253, 15 Ann. Cas. 761; In re Estate of Henry, 167 Iowa 557, 149 N. W. 605; Gilbert v. Ruggles, 189 Iowa 206, 178 N. W. 340; In re Estate of Osborn, 185 Iowa 1307, 168 N. W. 288; State v. Romaine, 58 Iowa 46; 11 N. W. 721; Ryke v. Ream, 212 Iowa 126, 234 N. W. 196; Riley v. State, 187 Wis. 156, 203 N. W. 767.

This rule is founded on decency, morality, and public policy. By that rule, the child is protected in his inheritance and safeguarded against future humiliation and shame. Likewise, under the rule, the family relationship is kept sacred and the peace and harmony thereof preserved. No one, by incompetent evidence, can malign the virtue of the mother, and no one, by such evidence, can interrupt the harmony of the family relationship and undermine the sanctity of the home. Wallace v. Wallace (137 Iowa 37, 114 N. W. 527, 14 L. R. A.

(N. S.) 544, 126 Am. St. Rep. 253, 15 Ann. Cas. 761), supra; Bruner v. Engeles, 88 Okl. 277, 213 P. 307; Sergent v. North Cumberland Mfg. Co., 112 Ky. 888, 66 S. W. 1036; Cross v. Cross, 3 Paige (N. Y.) 139, 23 Am. Dec. 778.

Such presumption of legitimacy may be rebutted by showing: First, that the husband is impotent; second, that the husband was entirely absent so as to have no access to the mother; third, that the husband was entirely absent at the period during which the child, in the course of nature, must have been begotten; and, fourth, that the husband was present only under circumstances which afford clear and satisfactory proof that there was no sexual relationship between him and his wife. Wallace v. Wallace (137 Iowa 37, 114 N. W. 527, 14 L. R. A. (N. S.) 544, 126 Am. St. Rep. 253, 15 Ann. Cas. 761), supra; Riley v. State (187 Wis. 156, 203 N. W. 767), supra; Phillips v. State ex rel. Hatchcock, 82 Ind. App. 356, 145 N. E. 895; In re Lewis' Estate, 207 Wis. 155, 240 N. W. 818; Taylor v. Whittier, 240 Mass. 514, 138 N. E. 6; Saunders v. Fredette, 84 N. H. 414, 151 A. 820. These propositions must be established by clear, satisfactory, convincing, and competent evidence.

Under the record in the case at bar, there is nothing to indicate that Joe Stecher was impotent. As a matter of fact, the contrary appears. At least three children, who are a sister and two brothers of the appellant, are the issue of Joe Stecher. Obviously he was not impotent when he begot the two older children. Neither was he impotent when he begot the fourth child. There is no competent evidence in the record to indicate Joe Stecher's impotency at the time the appellant was begotten. Consequently, so far as the impotency of Joe Stecher is concerned, the appellant has not made out a case.

It remains to be seen, then, whether appellant has proven his illegitimacy under the three remaining propositions of the rule above announced. Manifestly there is no evidence under the second proposition of the rule which in any way aids the appellant. Joe Stecher was not entirely absent from his wife, Rosa Stecher. He had access to her, because he lived in the home with her. Clearly, then, there is nothing in the record to indicate that the appellant has proven his illegitimacy under the second proposition of the aforesaid rule.

For convenience, consideration will next be given to the fourth proposition of this rule. Was Joe Stecher present only under circumstances which afford clear and satisfactory proof that there was

no sexual intercourse between him and his wife, Rosa Stecher? Plainly not. Rosa and Joe Stecher lived together on the farm during the time in question. There is no circumstance present in this record which indicates clearly or satisfactorily that this husband and wife had no sexual intercourse. On the contrary, it is indicated that during their married life they did have sexual intercourse, because, as before said, two older children were the fruit of this marriage; and likewise the youngest child without dispute is the result of such marriage relationship. Living together as they did it is presumed, until it is proven otherwise by competent evidence, that because of the marital access there was sexual intercourse between this husband and wife. Wallace v. Wallace (137 Iowa 37, 114 N. W. 527, 14 L. R. A. (N. S.) 544, 126 Am. St. Rep. 253, 15 Ann. Cas. 761), supra; Cross v. Cross (3 Paige [N. Y.] 139, 23 Am. Dec. 778), supra; People v. Case, 171 Mich 282, 137 N. W. 55; State v. Shaw, 89 Vt. 121, 94 A. 434, L. R. A. 1915F, 1087; In re Estate of Mills, 137 Cal. 298, 70 P. 91, 92 Am. St. Rep. 175; Warren v. Warren (41 Times L. Rep. 599), supra. .

 In establishing his illegitimacy, the appellant, when the husband was not impotent, and when nonaccess between the husband and wife has not been proven, cannot rely upon the fact that Rosa Stecher, the wife of Joe Stecher, committed adultery. While evidence that this woman committed adultery, if she did, might be material evidence under a proper case, yet in the case at bar such evidence is not competent to show that Joe Stecher is not the father of the appellant, because nonaccess was not shown. Warren v. Warren (41 Times L. Rep. 599), supra; Cross v. Cross (3 Paige [N. Y.] 139, 23 Am. Dec. 778), supra; 7 Corpus Juris 946, section 15; 3 Ruling Case Law, 729, par. 9. Such nonaccess cannot be proven by Rosa Stecher, the wife, directly or by her declarations. Evidence of certain alleged declarations of Rosa Stecher were offered in the district court. Proper objections were made thereto. As said in Wallace v. Wallace (137 Iowa, 37), supra, reading on page 47, 114 N. W. 527, 531, 14 L. R. A. (N. S.) 544, 126 Am. St. Rep. 253, 15 Ann. Cas. 761: '

"That which in the interest of society and common decency is excluded is the testimony or declarations of either spouse of access or nonaccess as bearing on the inquiry whether the husband and wife have had sexual intercourse during the period involved in controversy."

To the same effect see Taylor v. Whittier (240 Mass. 514, 138
N. E. 6), supra; In re Wright's Estate, 237 Mich 375, 211 N. W.
746; People v. Case (171 Mich 282, 137 N. W. 55), supra; Mink
v. State, 60 Wis. 583, 19 N. W. 445, 50 Am. Rep. 386; Cross v.
Cross (3 Paige [N. Y.] 139, 23 Am. Dec. 778), supra; Riley v.
State (187 Wis. 156, 203 N. W. 767), supra; King v. Peninsular
Portland Cement Co., 216 Mich. 335, 185 N. W. 858; Warren v.
Warren (41 Times L. Rep. 599), supra (Eng.); Schmidt v. State,
110 Neb. 504, 194 N. W. 679; Grates v. Gracia, 20 N. M. 158, 148
P. 493; Kreighbaum v. Dinsmore, 88 Ind. App. 693, 165 N. E. 526;
State v. Reed, 107 W. Va. 563, 149 S. E. 669; Scott v. State, 173
Ark. 625, 292 S. W. 979; Westfall v. Westfall, 100 Or. 224, 197 P.
271, 13 A. L. R. 1428; West v. Redmond, 171 N. C. 742, 88 S. E.
341; Kennedy v. State, 117 Ark. 113, 173 S. W. 842, L. R. A. 1916B,
1052, Ann. Cas. 1917A, 1029; 3 Ruling Case Law, 733, par. 12, and
p. 736, par. 15.

Likewise, under the same principle, the decedent, Clarence W.
Craven, could not by his declarations prove the illegitimacy of the
appellant. Evidence of such declarations of Craven was offered,
over proper objections, to prove the illegitimacy. Of course, if the
illegitimacy were established by competent evidence, the paternity
of the appellant, under proper circumstances, and within sufficient
limitations, could be proven by the acts and declarations of Craven
during his lifetime if the same came within the requirements of the
statute, as above indicated. As said by the Supreme Court of Kan-
sas in Bethany Hospital Co. v. Hale, 64 Kan. 367, 67 P. 848, read-
ing on page 849:

"A child born in wedlock is presumed to be legitimate, and
public policy does not permit this presumption to be overthrown
by the assertion, however solemnly made, by a putative father, that
the child was begotten by him. Orthwein v. Thomas, 11 Am. St.
Rep. 159, 127 Ill. 554, 21 N. E. 430, 4 L. R. A. 434. In this case
the recognition of the defendant in error by Swartz is sufficiently
established both by oral declarations, publicly made, and in letters
written by him to her. If, however, she was born in wedlock when
her mother was either the wife of Minos or of Danielson, the pre-
sumption of legitimacy attached, and could only be overcome by the
clearest and most conclusive evidence of nonaccess of the husband."

Under the facts and circumstances in the case at bar, Clarence

W. Craven could not in the very nature of things know that he was the illegitimate father of the appellant, assuming, without suggesting, that he had adulterous relationships with Rosa Stecher. In fairness to the deceased, it should be said that he appears, during his lifetime, to have denied the paternity of the appellant. For the reasons above assigned, the appellant cannot by admissions or declarations, as he attempted, prove himself to be the illegitimate son of Clarence W. Craven. The principles of public policy which bar the testimony and the acts and declarations of the father and mother likewise bar the testimony of the alleged illegitimate son. If the illegitimacy were proven, then, no doubt, under proper circumstances and within prescribed limitations, the alleged illegitimate son, to identify the illegitimate father, might testify to the acts and declarations of the alleged illegitimate father and of his mother. But when, as in the case at bar, illegitimacy has not been proven, then the admissions and declarations of the alleged illegitimate son are not admissible. Because of the presumption here involved, the pedigree rule, which sometimes applies, is not applicable in the case at bar. See In re. Estate of Frey, 207 Iowa 1229, 224 N. W. 597. Under the very nature of things, the appellant could not know, from personal knowledge, whether Joe Stecher or Clarence W. Craven is his father, and regardless of that, the rule of public policy above named closes the lips of the appellant on that question.

Therefore, it is clear beyond peradventure of doubt that the appellant in the case at bar has not made out a case under proposition four of the rule.

II. It is next to be considered, then, whether the appellant has proved his illegitimacy under proposition three of the rule; that is to say, Was Joe Stecher, the husband, absent at the period during which the appellant, in the course of nature, must have been begotten?

An attempt is made by the appellant to prove that Joe Stecher, on the occasion under consideration, made a trip to Muscatine, Iowa. The time of Joe Stecher's absence under this theory of the case is very indefinite and uncertain. In view of the evidence submitted, it is difficult to determine whether Joe Stecher was absent, if at all, for a week or a month. Much of the testimony is very unsatisfactory. Chris W. Schumann, of Lead, South Dakota, in his deposition stated that he was in the Stecher home from the middle of July until the middle of August, in the year 1898, when Joe Stecher was away.

This is the time when the period of gestation is alleged to have commenced. It is said by witnesses living in the community where Schumann resided that he is disreputable and his reputation for the truth and veracity was bad. On cross-examination, this witness greatly weakened his testimony by indicating that he was not present in the Stecher home at the time named. Hans and Henry Wulf testified that Schumann was not in the vicinity in 1898, but rather in the year 1899. A daughter of Peter Alberts also said that Schumann was in the vicinity in the year 1899, rather than in the year 1898. Discrepancy also appears in the testimony of Charles S. Higby, who likewise said that he was in the Stecher home in 1898. Higby apparently lives at Lake Crystal, Minnesota. Several witnesses testified to his bad reputation in the community in which he lived for truth and veracity. These witnesses say that Higby is a loafer and bootlegger. According to August Miller, Higby was in the vicinity of the Stecher home in 1897, rather than in 1898. Apparently Stecher "fired him off the place" in the year 1897. Mabel Stecher, a sister of appellant, also testified that the Higbys came to the Stecher home in 1897, rather than in 1898. Amos Craven testified that the Higbys moved away in the year 1897. Other testimony of a similar character was offered in evidence. It is very unsatisfactory and contradictory. Under the whole record, then, it cannot be satisfactorily said that Joe Stecher was away from his home from the middle of July, 1898, to the middle of August of that year, the alleged time of appellant's conception. Regardless of that, however, it does not appear by the testimony of any witness that Joe Stecher was away from his home more than thirty days. That period of time is not enough to indicate, under the facts of this record, that he did not have sexual intercourse with Rosa Stecher, and thereby produce the appellant.

A period of gestation varies in different cases. Doctors testifying for the appellees asserted that the average period of gestation was approximately 273 days. These doctors said, however, that there is a wide variation in the period of gestation, and according to this medical testimony:

"The child may be born anywhere from 230 to 240 days up to as long as over 300 days after the existence of the last menstrual period. A variation of a month on either side of 273 days would not arouse any great suspicion of trouble, and would be considered normal."

C. D. Plaas, a doctor, further testified as follows:

"The process of gestation actually starts with what is known technically as ovulation; when the female sex cell is let loose from the ovary and taken into the oviduct, or fallopian tube where it may or may not meet with the male element; if it does meet with the male element, that is the way conception takes place. Ovulation occurs from 15 to 16 days following the previous menstrual period. The spermatozoa or male element may remain in a state of viability and live in the body of the female for a period of time following intercourse before conception takes place."

This testimony of Dr. Plaas is corroborated by Dr. Billingsby, who testified substantially to the same effect. It cannot be said as a matter of law that a period of gestation does not vary in the manner indicated by the doctors. Consequently, the question becomes one of fact. So, in determining the nonaccess of the husband to his wife under the presumption above established, it cannot be said that the absence of a husband for thirty days near the time of conception proves the illegitimacy of the child. People v. Case (171 Mich. 282, 137 N. W. 55), supra; State v. Domish, 154 Minn. 512, 191 N. W. 1002; People v. Hill, 152 Ill. App. 78; State ex rel. People v. Banik, 21 N. D. 417, 131 N. W. 262; Qualls v. State, 92 Ark. 200, 122 S. W. 498; State ex rel. Brown v. Lyons, 104 Kan. 702, 180 P. 802; Pierson v. Pierson, 124 Wash. 319, 214 P. 159; Gaskill v. Gaskill, L. R. [1921] Prob. 425, 21 A. L. R. 1451.

Under the record in this case, we find, as a matter of fact, that the alleged absence of Joe Stecher from his home from the middle of July to the middle of August, 1898, was not sufficient to prevent him from being the father of the appellant. Manifestly, then, it is conclusive that the appellant has not established his illegitimacy. Not having established such illegitimacy, he can in no event recover in this case as the heir of Clarence W. Craven, deceased. The district court, then, properly quieted title to Clarence W. Craven's property against the appellant in the appellees, and the partition was rightfully allowed.

III. Apparently after Clarence W. Craven died the appellant called upon Mr. Hammer, at Newton, an attorney for the Craven estate, and suggested his claim on the theory of illegitimacy. Mr. Hammer, not desiring to accept the employment of an adverse interest, introduced the appellant to Mr. Korf, also an attorney in New-

ton. After this introduction, the appellant employed Mr. Korf to establish his interest in the estate as the illegitimate son of Clarence W. Craven, deceased.

Immediately Korf, as the attorney for the appellant, commenced to establish the claim. Soon after investigating the situation, Korf discovered in the law books the rule of law creating the presumption of legitimacy, before discussed, and advised the appellant that the best thing for him to do was to procure a settlement, if possible. Accordingly, Korf obtained a settlement for the appellant from the administrator on the basis of $20,000, plus the release of all claims which the estate held against the appellant, and a contract was drawn on that basis. That contract was signed by the appellant and the administrator, and by some others interested in the estate as well. This contract was held valid and enforceable by the district court. An attack is made upon the contract in this court, as was made in the district court, by the appellant on the theory: First, of fraud and collusion between Hammer and Korf; and, second, of invalidity because the contract with the administrator was not approved by the district court.

There is no evidence whatever to indicate any fraud or collusion between Hammer and Korf. The appellant's charge of fraud and collusion is entirely unproven, and Hammer and Korf are fully exonerated.

On the other hand, we find it unnecessary, under the circumstances, to determine whether or not the contract to be valid must have been approved by the district court. In view of the fact that the appellant has failed in his attempt to establish his claim to the property in the Craven estate on the theory that he is the decedent's illegitimate son, his attack upon the contract becomes entirely immaterial under the record. Full reliance is made upon the contract by the appellees, and they assert their willingness now to complete it regardless, and in spite, of the appellant's claim. So, the appellant, under the offer of the appellees to complete the contract of settlement may, if he desires, receive the amount of the settlement under the contract therefor.

Wherefore, the judgment and decree of the district court must be, and hereby is, affirmed.—Affirmed.

STEVENS, EVANS, ALBERT, DONEGAN, MITCHELL, ANDERSON, and KINTZINGER, JJ., concur.