32480.  STEED *v.* THE STATE.

DECIDED NOVEMBER 5, 1949.

*E. A. Wright, Joseph W. Lowe,* for plaintiff in error.

*John I. Kelley, Solicitor, Paul Webb, Solicitor-General, William Hall, B. B. Zellars,* contra.

GARDNER, J. (a) We will deal with grounds 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 12, 13, and 14 together, for they, in substance, deal with the usual general grounds as embraced in grounds 1, 2 and 3. The State sets out in its argument and citation of authority that from November 9, 1947, the date of the intercourse between the accused and the prosecutrix, until the birth of the child, August 31, 1948, was 296 days. This is correct. The State also calls to our attention State *v.* Shaw, 89 Vt. 121 (94 A. 434, 58 L. R. A. (N. S.) 1087). Periods of gestation may vary from 252 days to 300 days before the birth of the child. See Souchek *v.* Karr, 78 Neb. 488 (111 N. W. 150). Any period in excess of 300 days is exceptional, and each day over 300, the exceptional character of the case is intensified. In France, 300 days has been adopted as the accepted period of gestation. French Civil Code, Article 315. McNeely *v.* McNeely, 47 La. Ann. (17 Sou. 928). Our courts will take judicial notice of what medical science has determined to be the normal periods of gestation and will consult medical books for that purpose. See 7 A. L. R. 313, 319. While the State does not call it to our attention, that same authority, 7 A. L. R. 319, in a different excerpt from that mentioned above, states: "An examination of recent medical text-books and articles leaves no doubt as to two points: First,

that 304 days is a possible period of gestation; and, next, that it is quite an exceptional one. While the average period of gestation is generally taken as 280 days, there are instances vouched for by reputable authorities ,where the period has exceeded 330 days, and there are instances, too well authenticated apparently to admit of reasonable question, where the period has exceeded 320 days." 304 days of gestation is presumed to be excessive. There are other authorities on the period of gestation, although not called to our attention by the State, which are pertinent here. In Pierson *v.* Pierson, 124 Wash. 319 (214 Pac. 159), the Supreme Court of Washington held: "Birth of a child 336 days after cohabitation is not conclusive evidence of illegitimacy." And on page 160 that court said: "The medical authorities on the subject disclose that while such an exceptional period is exceedingly rare, yet there are well authenticated cases of even longer periods. A court will not by its judgment brand an innocent child with the bar sinister unless the record is so far conclusive as to leave room for no other course." It is interesting to note that in 7 A. L. R. 330, that treatise has this to say on the English law: "In the time of Edward II, the Countess of Gloucester bore a child one year and seven months after the death of the duke and it was pronounced legitimate." Finally, on this question,. we would like to call attention to another case which we think is pertinent to the evidence in this case and within itself, if the medical authority referred to therein is true, would require a reversal of this case, Craven *v.* Selway, 216 Iowa 505 (246 N. W. 821), wherein the Supreme Court of Iowa held that evidence of the husband's absence from his wife for 30 days near the time of a son's conception was insufficient to establish the latter's illegitimacy in view of physician's testimony as to variation of the gestation period, such variations being question of fact, not law. "A period of gestation varies in different cases. Doctors testifying for appellees asserted that the average period of gestation was approximately 273 days. These doctors said, however, that there is a wide variation in the period of gestation and according to this medical testimony: 'The child may be born anywhere from 230 to 240 days up to as long as over 300 days after the existence of the last menstrual period. A variation of a month on either side of 273 days would not arouse any great suspicion of trouble and would be considered normal.'

"C. D. Plaas, a doctor, further testified as follows: 'The process of gestation actually starts with what is known technically as ovulation; when the female sex cell is let loose from the ovary and taken into the oviduct, or Fallopian tube where it may or may not meet with the male element; if it does meet with the male element, that is the way conception takes place. Ovulation occurs from 15 to 16 days following the previous menstrual period. The spermatozoa or male element may remain in a state of viability and live in the body of the female for a period of time following intercourse before conception takes place.'"

We have set out in particularity the material evidence of the prosecutrix. It will be noted therefrom that the prosecutrix testified that she had intercourse with James Moseley in October and that it was not the latter part of October, so far as she could remember. She had intercourse with him a lot of times before she had intercourse with the defendant and that James Moseley did not use contraceptives. The number of days from the date she had intercourse with James Moseley (even if it were the middle of October, i. e., October 15th) and the birth of her child on August 31, 1948, was 319 days. There is ample medical authority to which we have called attention hereinabove that such a period might not be the average, normal period of gestation and might be termed exceptional, yet it was not unusual. We would like to call attention here to the last paragraph which we have quoted from the case of Craven v. Selway, supra. There the medical authorities testifying to the period of gestation stated that such period actually starts from what is technically known as ovulation, when the female sex cell is let loose from the ovary and taken into the Fallopian tube, where it may or may not meet with the male element. If it meets with the male element, that is the way conception takes place. Ovulation occurs from 15 to 16 days following the previous menstrual period. The male element may remain in a state of viability and live in the body of the female for a period of time following intercourse before conception takes place. This being accepted as a sound medical principle of conception, it is equally as reasonable to conclude that the male element of James Moseley remained in the body of the prosecutrix in a state of viability for a period of several days before conception took place, and that Moseley is the father

of the child, as it is to conclude, under the facts of this case, that the defendant is the father of the child. Especially is this true in view of the evidence and the established medical authorities on this question, on which medical authorities relating to this case we must rely. In this connection we should keep in mind that the prosecutrix in her preliminary affidavit instituting these proceedings swore that the date of her intercourse with the defendant was December 2, 1947. We realize that ordinarily the evidence is not confined to the date alleged in an accusation, but in this case the date of the intercourse between the prosecutrix and the defendant is material. Such a variance as to the date of the intercourse between the prosecutrix and the defendant, as testified to by the prosecutrix, the date in the accusation and the date specified in the evidence, causes one looking for the truth which must be established beyond a reasonable doubt, to inquire just why this variance; it must be kept in mind also that the testimony of the prosecutrix in many respects was not definite. She did not know how many times she had intercourse with James Moseley, from her testimony presumably so many times she could not remember the number; and according to her testimony she did not know definitely the date of her last intercourse with James Moseley. She thought it was the first part of October instead of the last. She was not certain. Just why did she change from December 2 to November 8th or 9th? It might have been, and it is reasonable to infer, that she learned that she could not establish the fact that she had intercourse with the defendant on December 2 and she, in the parlance of football, made a wide swing to the left and found a hole in the line through which she thought she could carry the ball for a touchdown of conviction of the defendant. We think, according to the evidence and the law, that she fumbled. So far as the general grounds are concerned, as set forth in grounds 1, 2, 3 and others special grounds not herein specified, the evidence is insufficient to sustain the verdict.

(b) Special ground 4, which is an elaboration of the general grounds, complains because the court did not charge the law of circumstantial evidence. We think this principle of law is involved in this case and the court should have charged on it without a request to do so. Where the evidence is wholly circum-

stantial, the court's failure to charge the principle of law pertaining to circumstantial evidence is reversible error. The question in this case is the identity of the father of the bastard child. This is a jury question and the evidence adduced by the prosecutrix to show the identity of the father was wholly circumstantial. The court committed reversible error in this regard.

(c) Special ground 8 assigns error because the court confined the evidence as to the intercourse of the prosecutrix with other men than the defendant to the months of October and November, 1947. This precluded the defense from introducing evidence that the prosecutrix had intercourse with other men than the accused in December, 1947, it being remembered that December 2, 1947, is the date set out in the prosecutrix's affidavit instituting the proceedings and also the date set out in the accusation. If the prosecutrix conceived approximately before December 20, and during the month of December, 1947, those dates until the birth of the child would have been nearer the normal period of gestation than the dates proved in November. While it is true that the defendant did not offer any evidence to the effect that the prosecutrix had intercourse with other men in December, 1947, still the court precluded the defendant from doing so by confining the testimony to the months of October and November, 1947. Under all the facts of this case we think this was reversible error.

(d) The final special ground which we consider meritorious (and the other special grounds we consider not meritorious except those mentioned hereinbefore) is special ground 16. Error is assigned in this special ground because the court refused, over objections from the State, to permit the attorney for the defendant on cross-examination to question the prosecutrix as to whether she had lived with James Moseley as husband and wife. By this question the attorney for the defendant sought to prove a common-law marriage between James Moseley and the prosecutrix. All children are presumed to be legitimate until the contrary is proven, and the law will even go so far as to presume a former marriage to make the child legitimate and not a bastard. 7 C. J., p. 940, § 5. And in the same volume, at pages 940, 941, § 6, it is stated: "Every child born in wedlock is by law presumed to be legitimate, even though the birth happened so

soon after the marriage as to render it certain that it was the result of antenuptial conception, or even though it may be shown also that the wife was guilty of infidelity." We need cite no authority that a common-law marriage in this State is a valid marriage. The only evidence with reference to the marriage of the prosecutrix is in the evidence, "I am not married." This evidence was given on October 12, 1948, following the birth of the child on August 31, 1948. The evidence does not show that she was not married in October, 1947, and the intervening months from that date until the trial on October 12, 1948. In our opinion the testimony that she was not married on October 12, 1948, was not sufficient to overcome the presumptive legitimacy of the child. She could, prior to that time, have been married by a record marriage in compliance with the laws of this State, or could have been wedded under the common-law form. And either of these could have been dissolved sometime between November 8 or 9, 1947, and the date of the trial on October 12, 1948. The burden was upon the State to prove such fact. It did not do so by proving only that the prosecutrix was not married at the date of the trial on October 12, 1948. This assignment is meritorious.

*Judgment reversed. MacIntyre, P. J., and Townsend, J., concur.*