JEANETTE HUBERT *vs.* WILFRID CLOUTIER

*alias* WILFRED ROUTHIER.

York.     Opinion, October 7, 1937.

*Armstrong & Spill*, for complainant.
*Leroy Haley*, for respondent.

SITTING: DUNN, C. J., STURGIS, BARNES, THAXTER, HUDSON, MAN-
SER, JJ.

THAXTER, J.  This complaint in bastardy was duly tried before
a jury. At the conclusion of the complainant's case the respondent
rested without introducing any evidence and each party moved for
a directed verdict. The motion of the complainant was granted and
that of the respondent denied. To these rulings the respondent has
filed exceptions.

The complainant at the time the child was conceived and born
was a married woman; and the presumption is that such child born
during wedlock is the child of her husband and legitimate. In early
times in England such presumption was held to be conclusive, if the
wife had issue while the husband, not being impotent, was within
the four seas, that is, within the jurisdiction of the King of Eng-
land. Co. Litt., 244; Rolle's Abr., 358, tit. Bastard; *Matter of
Findlay*, 253 N. Y., 1, 170 N. E., 471, 472; 7 Am. Jur., 636. The
rigor of such doctrine has now given way to reason; and it is held
that such presumption can be rebutted. It is, nevertheless, as Car-
dozo, Ch. J. says in *Matter of Findlay*, supra, "one of the strongest
and most persuasive known to the law" and "will not fail unless
common sense and reason are outraged by a holding that it abides."
Proof of the mother's adultery is not in itself sufficient to rebut it.
*Grant* v. *Mitchell*, 83 Me., 23, 21 A., 178; *Matter of Findlay*,
supra.

In the case now before us it was accordingly necessary for the
complainant to prove non-access by her husband. The only evidence
of any weight on this point is her own testimony to the effect that she
and her husband had not lived together for two years. Without
such evidence her case would fall. The respondent objected to its
introduction. We think his objection was well taken.

In 1777, Lord Mansfield laid down the rule in England that the
testimony of neither husband nor wife could be admitted to show
non-access by the husband, if the result would be to bastardize issue
born after marriage. "It is," he said, "a rule founded in decency,
morality, and policy." *Goodright, ex dem. Stevens* v. *Moss*, Cowp.,
591. This doctrine has since been followed in England and by the

vast majority of courts in this country. *The Aylesford Peerage*, 11 A. C., 1; *Russell* v. *Russell*, 1924, A. C., 687; *Kennedy* v. *State*, 117 Ark., 113, 173 S. W., 842; *Wallace* v. *Wallace*, 137 Ia., 37, 114 N. W., 527; *Craven* v. *Selway*, 216 Ia., 505, 246 N. W., 821; *Martin* v. *Stille*, 129 Kan., 19, 281 P., 925; *Scanlon* v. *Walshe*, 81 Md., 118, 31 A., 498; *Haddock* v. *The Boston and Maine Railroad*, 3 All., 298; *Taylor* v. *Whittier*, 240 Mass., 514, 138 N. E., 6; *Rabeke* v. *Baer*, 115 Mich., 328, 73 N. W., 242; *Chamberlain* v. *The People*, 23 N. Y., 85; *Matter of Findlay*, supra; *Boykin* v. *Boykin*, 70 N. C., 262; *Tioga County* v. *South Creek Township*, 75 Pa., 433; *Mink* v. *The State*, 60 Wis., 583, 19 N. W., 445; 7 Am. Jur., 640; 7 C. J., 944; Ann. Cas., 1917 A., 1031, note.

Statutes removing the bar against parties testifying or even those specifically authorizing the mother to testify in bastardy proceedings do not change the rule. The effect of such enactments is merely to make a witness competent, not to let down the bars as to the evidence which may be properly admitted. *Kennedy* v. *State*, supra; *Boykin* v. *Boykin*, supra; *Russell* v. *Russell*, supra.

The rule which we feel must be applied to this case has been criticized by very eminent authority. 4 Wigmore on Evidence, 2 ed., 381, *et seq*. It was, however, promulgated by Lord Mansfield, a very great and an essentially practical judge. It has been followed because it has appealed to the sober common sense of subsequent generations. Cases may be cited, real or suppositious, where it may work a hardship. The question, however, is not what may be the bearing of the rule on a particular problem, but whether by and large the enforcement of it is politic. The application of it prevents many unseemly contests over the legitimacy of children, and tends to keep inviolate those marital confidences, the disclosures of which arouse only disturbing suspicion and prove nothing.

The vital evidence in this case of non-access was objected to, but exceptions were not taken to its introduction. As the rule justifying its exclusion rests on broad grounds of public policy, the court had no right to consider it even though it might technically be in the case. Without it the proof utterly fails.

*Exceptions sustained.*