143 P.2d 871

**SALAS v. OLMOS.**

No. 4793.

Supreme Court of New Mexico.

Dec. 13, 1943.

M. J. McGuinness, of Albuquerque, for appellant.

Otto Smith, of Clovis, for appellee.

THREET, Justice.

Florence Salas, appellee, filed suit in the District Court of Curry County, New Mexico, against Gabriel Olmos, appellant, charging that, on July 18, 1940, she gave birth to an illegitimate child, Ted Salas; that the appellant is the father of the child, and praying for medical expenses incurred by appellee at the birth of the child and for support money.

The facts found by the court are as follows:

"1. That both plaintiff and defendant are residents of Curry County, New Mexico.

"2. That on July 18th, 1940, the plaintiff gave birth to an illegitimate child named Ted, and the Defendant, Gabriel Olmos, is the father of said illegitimate child.

"3. That said illegitimate child, Ted, was born in wedlock.

"4. That the plaintiff has incurred doctor bills and medical bills in the amount of $40.00 which should be paid by the defendant, and that a reasonable monthly amount for the support and maintenance of said child, commencing February 1, 1943, is $25.00.

"5. The Court finds the issues generally in favor of plaintiff and against the defendant."

Judgment was entered against the appellant for the sum of $25 per month for the support and maintenance of the child, beginning February 1, 1943, and continuing during the minority of Ted Salas, together with the further sum of $40 to cover medical expenses incurred by appellee at the birth of her child.

From this judgment appellant appeals and assigns numerous errors, only one of which will be necessary to notice for a determination of the question here presented.

Appellant's Assignment of Error No. 3 challenges the sufficiency of the evidence to support the court's Finding No. 2, and is as follows, to-wit: "The court erred in making and entering Finding of Fact No. 2 wherein he finds that the defendant-appellant, Gabriel Olmos, is the father of the child, Ted Salas, because there is no substantial evidence to support such a finding."

Appellant recognizes the well-established rule that this court is bound by the trial court's finding of fact when supported by substantial evidence; but contends for the converse of the rule that, findings of fact, not supported by substantial evidence, cannot be sustained on appeal. In Manby v. Voorhees, 27 N.M. 511, 203 P. 543, we said: "While findings of a referee and of the trial court will not be disturbed where they are supported by substantial evidence, they are subject to review in this court when not so supported."

And, in Jones v. Jernigan et al., 29 N.M. 399, 223 P. 100, it is said: "A finding of fact, not supported by substantial evidence,

cannot be sustained on appeal, and a judgment based on such finding is itself without support."

■ The trial court, in recognition of the long-established rule, that a child, born in wedlock, is presumed to be legitimate, and neither husband nor wife, in the interest of society, common decency and good morals, will be permitted to bastardize the issue of the wife, struck from the record all evidence given by appellee tending to show non-access of the husband. In Grates v. Garcia, 20 N.M. 158, 148 P. 493, we said:

"It being conceded that Paul Grates was born in lawful wedlock, the presumption arises that he was the legitimate child of such marriage. This rule is universal, and is laid down by Prof. Jones, in his 'Blue Book on Evidence,' vol. 1, § 93, as follows: 'There is no presumption of law more firmly established and founded on sounder morality and more convincing reason than the presumption that children born in wedlock are legitimate.'

"See, also, Gaines v. New Orleans, 6 Wall. 642, 18 L.Ed. 950; Gaines v. Hennen, 24 How. 553, 16 L.Ed. 770; Adger v. Ackerman, [8 Cir.], 115 F. 124, 52 C.C.A. 568; Zachmann v. Zachmann, 201 Ill. 380, 66 N. E. 256, 94 Am.St.Rep. 180; Weatherford v. Weatherford, 20 Ala. 548, 56 Am.Dec. 206, and note.

"This presumption being thus raised, the mother was not a competent witness, under the facts in this case, to prove that the child was not begotten by the man who be-

came her husband before its birth (Jones on Evidence, § 97; Wallace v. Wallace, 137 Iowa 37, 114 N.W. 527, 126 Am.St.Rep. 253, 15 Ann.Cas. 761, and note, 14 L.R.A.,N.S., 544, and note), and the court should not have permitted her to testify that the child was begotten by Garcia."

In Wallace v. Wallace, 137 Iowa 37, 114 N.W. 527, 531, 14 L.R.A.,N.S., 544, 126 Am. St.Rep. 253, 15 Ann.Cas. 761, cited with approval in Grates v. Garcia, supra, we find the rule thus stated: "It is safe to say, then, in the light of authority, that neither the declarations nor the testimony of either spouse, may be received in evidence to prove access or nonaccess to the other. This does not mean that a spouse may not give testimony having a tendency to show the offspring to have been begotten by a third person, and under the decisions to which attention has been directed, the wife's evidence of illicit connection with any person other than her husband and her admissions concerning the same are held to be admissible. That which in the interest of society and common decency is excluded is the testimony or declarations of either spouse of the access or nonaccess as bearing on the inquiry whether the husband and wife have had sexual intercourse during the period involved in controversy. * * *"

All the evidence, given by appellee relative to non-access of her husband, being eliminated from the record, the finding complained of must find support in the testimony of Mrs. E. Lovato and Louisa Muel-

ler, the only other witnesses offered by appellee to prove non-access of the husband of appellee during the period of time when, in the course of nature, the child, Ted Salas, must have been conceived.

In approaching the proposition involved here, we will assume, of course, that, if there be any substantial evidence in the record supporting the finding of the court it will not be disturbed.

The record shows that appellee rented living quarters from appellant, at different intervals, from 1935 or 1936 up to and including the year 1940. This becomes important only as it pertains to the testimony of the two witnesses for appellee in relation to the question of non-access of the husband during the period of time when, in the course of nature, the child must have been conceived.

Mrs. E. Lovato, a witness for appellee, testified as follows:

(Direct)

"Q. Were you present at the home of Florence Salas on July 17th, 1940? A. Yes.

"Q. When she gave birth to a baby? A. Yes.

"Q. Where was Mrs. Salas living at the time? A. At 216 Thornton Street.

"Q. Whose house was she living in? A. Mrs. Barela's.

"Q. How long had she been living in that house? A. About two months.

"Q. Where did she live before she moved to Mrs. Barela's house? A. In the house of Mr. Olmos, the Casino.

"Q. How long did she live at the Casino? A. Two or three months.

"Q. Where did she live before she lived at the Casino? A. She used to live on First Street, in Mr. Olmos residence.

"Q. Do you know who lived in the Olmos residence at the time Mrs. Salas was living there? A. Yes. Mr. Olmos and Miguel Olmos his brother. Mr. Olmos and his mother.

"Q. Where is Mr. Gabriel Olmos' mother and Miguel Olmos, are they living or dead? A. They are dead.

"Q. Do you know how long Mrs. Salas lived in the house of Miguel Olmos and his folks? A. About a year, I guess. I used to visit Mrs. Salas.

"Q. You say you visited Mrs. Salas? A. Yes, a number of times.

"Q. Were you acquainted with Mrs. Salas' husband? A. Yes, very well.

"Q. Do you know how long before Mrs. Salas moved into Gabriel Olmos' house that she had lived with her husband? A. Well, when he was working out South of Clovis probably awhile because I used to visit her some.

"Q. Was Mrs. Salas living with her husband at the time she was living at Gabriel Olmos' house? A. No."

(Cross Examination)

"Q. You stated a while ago or attempted to state there that Mr. and Mrs. Salas were not living together? A. Not at the time.

"Q. This man came in once in awhile— this man used to come to Clovis and lived with his wife from time to time? A. Yes, because he told me he had to come once in a while and had to leave for his work.

"Q. And always when he had work in Clovis he lived with his wife, Mrs. Salas? A. I think so.

"Q. You attempted to say, Mrs. Lobato or said positively everytime that he came to Clovis. Are you positive about that, the times he came? A. Yes, because I visited her like I used to before.

"Q. Could there have been some instances when this Mr. Salas came to Clovis that you didn't know he was here? A. Sometimes I knew he lived with her because he used to come and I ate dinner with him sometimes.

"Q. You didn't quite answer my question. Could there have been some other times when you didn't see him here? A. No.

"Q. In other words, he was in town a number of times when you didn't see him? A. No. Sometimes he came to town and I didn't visit her, so I don't know.

"Q. Did you see any other man there besides Mr. Olmos when you went to visit Mrs. Salas? A. No, never.

"Q. How often were these visits? A. Sometimes three times a week.

"Q. In the day time or at night time? A. At night.

"Q. After supper time? A. Sometimes right after supper.

"Q. And outside of Mr. Salas, the husband and Mr. Olmos the Defendant, who else did you see there? A. Mr. Olmos and Mrs. Salas eating dinner at the table.

"Q. Did you see Mr. Salas? A. He was not there for a long time then. He hadn't lived with her in a long time, oh, about three years I guess. They were separated or rather he went away.

"Q. But you saw Mr. Salas there sometimes with his wife? A. A long time before.

"Q. And after that why you didn't see him at all, Salas? A. No."

(Redirect Examination)

"Q. Did you at any time see Mrs. Salas with Mr. Salas after she moved into Gabriel Olmos house? A. No.

"Q. He was gone long before that? A. Yes; he was not there when she lived with Mr. Olmos."

Luisa Mueller, a witness for appellee, testified as follows:

(Direct)

"Q. Were you acquainted with Mr. Salas? A. Sure.

"Q. Was he around at any time while Mrs. Salas was living in Mr. Olmos' house? A. No, I never saw him there.

"Q. Do you know whether or not he was in Clovis during the year 1939? A. No.

"Q. I didn't understand the answer. Do you mean he was not in Clovis during 1939, or that you don't know? A. In 1937 Mr. Salas left and he has not been in this town any more."

(Cross Examination)

"Q. Now, wasn't Mr. Salas here around June 1940? A. No, not that I ever seen him.

"Q. He might have been in town and you didn't see him? A. I never saw him. I never saw him at Florence's."

The presumption of law that a child born in wedlock is legitimate may be rebutted, but it stands until it is overruled by competent evidence. The burden of overcoming the presumption rested upon appellee. Has she met that requirement?

The courts differ as to the degree of proof that will be required. In Abbott on Facts, 5th Ed., under the chapter on paternity, page 1196, in speaking of the degree of proof required to rebut the presumption of the legitimacy of a child born in wedlock, says: "Some courts require a showing of natural impossibility. But such rebutting evidence must be greater than is needed to overcome the ordinary presumption of fact, because prevention of bastardy benefits society as a whole. It is more frequently stated that such evidence must be strong, distinct, satisfactory and conclusive, although perhaps a more practical rule is that proof beyond a reasonable doubt is necessary."

The modern doctrine appears to be that the presumption may be rebutted by showing (1) the husband is impotent; (2) that he was entirely absent so as to have no access to the mother; (3) or entirely absent at the period during which the child, in the course of nature, must have been begotten; (4) and present only under circumstances which afford clear and satisfactory proof that there was no sexual intercourse. Wallace v. Wallace, supra; In re Estate of Henry Jones, 110 Vt. 438, 8 A.2d 631, 128 A.L.R. 704.

The cases on this question may be found collected in the annotation to In re Estate of Henry Jones, supra. There it will be noted that the degree of proof required to overcome the presumption is not uniform. Some require proof "beyond a reasonable doubt", others say that the proof must be "clear and convincing"; "clear and satisfactory"; and "clear, cogent and strong".

In Re Jubala's Estate, 40 N.M. 312, 59 P.2d 356, we held that the presumption of a valid marriage could not be overcome except by evidence so clear, strong and unequivocal as to produce a moral conviction in the minds of the court that the obstacle of the previous marriage existed at the time of such marriage. Certainly, if the presumption of a valid marriage may not

be overcome except by proof of the degree pointed out in In Re Jubala's Estate, supra, no less should be required in the case at bar. We hold, according to the majority rule, that the proof, of non-access of the husband, necessary to overcome the presumption of legitimacy, where a child is born in wedlock, should be cogent, clear, convincing and satisfactory.

 Tested by this rule, appellee failed to sustain the burden of proof necessary to overthrow the presumption of legitimacy of the child, Ted Salas, and the trial court erred in making the Finding of Fact No. 2.

The evidence shows that the husband of appellee did visit her after they separated on different occasions and remained at her home some two or three weeks at a time. There is no evidence as to just when these visits ceased. The most that can be said of the evidence on this point is that the husband ceased to live with appellee after she moved to appellant's house. This is too indefinite to show non-access by the husband, as the record shows that appellee first moved into one of appellant's houses, with her husband, in the year 1935 or 1936, and lived, at different times, in one of appellant's houses from that time up to and including the year 1940; and five or six months prior to the birth of the child, apparently had been living in the Olmos residence. There is a total lack of evidence to show the husband's absence from the town of Clovis or the immediate community. The witnesses base their conclusion of his absence upon the fact that they had not seen him with appellee or at her home. This evidence was not sufficient to overcome the presumption of legitimacy of the child, Ted Salas, and show non-access of the husband.

A showing of circumstances merely creating doubt or suspicion is not sufficient to rebut the presumption of legitimacy arising from birth in wedlock. Shuman v. Shuman, 83 Wis. 250, 53 N.W. 455; Riley v. State, 187 Wis. 156, 203 N.W. 767; Pinkard v. Pinkard, Tex.Civ.App., 252 S.W. 265; Russell v. Russell, 118 S.C. 420, 110 S.E. 791; Jackson v. Thornton, 133 Tenn. 36, 179 S.W. 384.

For the reasons herein stated, the judgment will be reversed and remanded, with instructions to grant appellant a new trial and, it is so ordered.

SADLER, C. J., and MABRY, BICKLEY, and BRICE, JJ., concur.