**PETERS v. DISTRICT OF COLUMBIA.**

No. 1105.

Municipal Court of Appeals for the
District of Columbia.

Reargued Sept. 24, 1951.

Decided Oct. 30, 1951.

Franklin A. Higgs, Washington, D. C., with whom Ena M. St. Louis, Washington, D. C., was on the brief, for appellant.

Edward A. Beard, Asst. Corp. Counsel, Washington, D. C., with whom Vernon E. West, Corp. Counsel, Chester H. Gray, Principal Asst. Corp. Counsel, and James T. Brennan, Asst. Corp. Counsel, Washington, D. C., were on the brief, for appellee.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CAYTON, Chief Judge.

By information filed in the Juvenile Court, appellant was charged with being the father of a child born out of wedlock. The complainant was a married woman who initiated the action pursuant to Public Law 917, Chapter 1225, 81st Congress, 2d Session, approved January 11, 1951.[1] A jury found appellant guilty of siring the child. His motions for new trial were overruled and the court entered an order requiring him to support the child. This appeal followed.

Complainant testified that she and her husband were separated in October 1948 and continued so until approximately one month after the child in question was born (on August 1, 1950). In September 1950 they resumed living together as husband and wife until shortly before the complaint was filed in this action, when they again separated. During the first period of separation, the husband visited her in her apartment about once a week for the purpose of giving her money for their children.

Complainant further testified she met the defendant in March 1949 and from then until some time after she became pregnant she had sexual relations with him in her apartment several times each week. When she became aware of her pregnancy in November 1949 she told defendant and they discussed abortion. Complainant said she did not see him again until March 1950 when he gave her $100 for an abortion (which money she instead spent for food.) The baby was born on August 1, 1950 and according to Government evidence was registered as Steven Louis Washington, (the surname being that of her husband). She did not see the defendant again until

1. This enactment repealed the former law on the subject, 37 Stat. 134, as amended 41 Stat. 1144, 44 Stat. 208. Among other changes it provides in Section 5 that "any married woman who is at least four months pregnant with a child, which if born alive, may be born out of wedlock, or who has been delivered of a child born out of wedlock and who was not living with nor cohabiting with her husband during the period of time in which such child could have been conceived, may go before an Assistant Corporation Counsel for the District of Columbia at the juvenile court and accuse any man of being the father of her child and request his arrest."

October 1950, after the baby was born and after she and her husband had resumed living together. She said that at that time he promised to give her some help but did not do so. Complainant also testified that defendant had admitted in the presence of her sister that he was the father of her child. Her sister, called as a witness for the Government, testified differently; she said defendant did not in her presence admit his paternity.

Defendant took the stand and completely denied the possibility of paternity. He said that he had known the complaining witness and been "on friendly terms with her" from about March 1949 until he discontinued his association with her in August 1949. He said that he had heard no more from her until November 1950 and denied giving her money for any purpose.

■ Before discussing the merits of the appeal there is a jurisdictional question we must settle—one we raised of our own motion. After the appeal had been briefed and argued, our study of the case suggested (though appellant had not raised the question in the trial court or here) that we should inquire into the question as to whether the statute was being given a retrospective effect. As pointed out above the statute was approved January 11, 1951. This was more than a year after the child was conceived and more than five months after it was born. Prior to the passage of the Act, married women admittedly had no right to lodge a complaint of this kind in Juvenile Court. The Act removed such disability and expressly provided that " * * * any married woman * * * who has been delivered of a child born out of wedlock and who was not living with nor cohabiting with her husband during the period of time in which such child could have been conceived, may [within two years after the birth of the child] go before an Assistant Corporation Counsel for the District of Columbia at the juvenile court and acouse any man of being the father of her child and request his arrest." We raised the question as to whether a putative father could be made answerable in a paternity proceeding under a statute which

was not in existence at the time of the conception or birth of the child. Accordingly, under our order supplementary briefs were submitted on the question and the case was reargued. Our further study of the matter satisfies us that the Juvenile Court had jurisdiction to receive the complaint and maintain the proceedings against the appellant.

■ We recognize the established rule that ordinarily statutes operate prospectively only and that there is an "almost conclusive presumption against power to take retroactive action unless Congress plainly specifies such power." Transcontinental & West. Air v. Civil Aeronautics Bd., 83 U.S. App.D.C. 358, 359, 169 F.2d 893, 894, affirmed 336 U.S. 601, 69 S.Ct. 756, 93 L.Ed. 911. But it is also the rule that "A statute is not retroactive merely because it draws upon antecedent facts for its operation." Neild v. District of Columbia, 71 App.D.C. 306, 315, 110 F.2d 246, 255, (cited in Transcontinental & West. Air v. Civil Aeronautics Bd., supra), quoting from Lewis v. Fidelity & Deposit Co., 292 U.S. 559, 571, 54 S.Ct. 848, 78 L.Ed. 1425. See also United States v. Jacobs, 306 U.S. 363, 59 S.Ct. 551, 83 L.Ed. 763; Home Indemnity Co. v. State of Missouri, 8 Cir., 78 F.2d 391.

■ The only "antecedent facts" involved in this case were the conception and birth of the child. The object of a statute like this is not to punish a putative father for fornication or adultery but *to provide support for the child*. Dicks v. United States, D.C.Mun.App., 72 A.2d 34, 35. There we said that "The moral obligation of the father to support his illegitimate child is converted by the statute into a legal obligation * * *" It was that legal *obligation to support* which was put into effect by the order entered in this case; and such order was entirely prospective.

■ It has been held, and we think correctly, that the obligation to support is a distinct and continuing duty. Richardson v. State, 7 Boyce, Del., 534, 109 A. 124, 125; Cummings v. Church, 50 R.I. 71, 145 A. 102; People v. Stanley, 33 Cal.App.

624, 166 P. 596. It has also been held that it is immaterial when the child was begotten or born. State v. Parker, 209 N.C. 32, 182 S.E. 723; McLain v. Meadows, 44 Cal.App. 402, 186 P. 411. See also Commonwealth v. Callaghan, 223 Mass. 150, 111 N.E. 773, certiorari denied 241 U.S. 667, 36 S.Ct. 551, 60 L.Ed. 1229; Wamsley v. People, 64 Colo. 521, 173 P. 425; Libby v. State, 42 Okl. 603, 142 P. 406. The antecedent fact of defendant's paternity having been established, the Juvenile Court did no more than pass an order fixing the amount he was to pay for the support of the child *in the future*. In this there was nothing of a retroactive or ex post facto nature. "It is to enforce that present legal duty, and none other, that the action is brought." McClain v. Meadows, supra, 44 Cal.App. at page 403, 186 P. at page 412, and cases there cited. We think it clear that in this case a prospective statute has been given a prospective effect, and that the jurisdictional question must be decided adversely to appellant.

One of appellant's contentions is that the trial court erred in refusing to permit his counsel to cross-examine complaining witness concerning contents of the birth certificate filed with the Bureau of Vital Statistics, which tended to show that the child involved was considered and denominated legitimate by the mother at the time of its birth. We think there would be merit in the contention if the record supported it. If the mother of a child, designated as the "Informant" as to the facts in the certificate, recorded according to law,[2] had there made statements as to the paternity of her child which are at variance with statements she later makes in court to establish a different paternity, it is obviously a proper subject of cross-examination. But the record presented to us does not show that such cross-examination was attempted or refused.

Another error assigned relates to refusal to permit cross-examination of the complainant as to her association with other men. The trial judge ruled that any such association would have to fall within the period from October 4, 1949 to November 15, 1949 because that was the only period during which she could have conceived the child. This is in harmony with Thomas v. United States, 74 App.D.C. 167, 121 F.2d 905, where it was held that the chastity of the mother is immaterial and that relations with other men must be limited to the period of possible conception. If upon the retrial similar cross-examination is attempted, its scope should be limited accordingly.

Appellant's principal arguments are based on the so-called "presumption of legitimacy," involved when the paternity of a child born to a married woman is questioned. Appellant says in effect that this presumption bars the prosecution. The presumption of legitimacy of a child born in wedlock has always been considered one of the strongest known to the law. In England, unless a husband was impotent or "beyond the four seas," the rule was that the presumption was conclusive. Because of the obvious absurdities and injustices flowing from such a rule, the "ancient rigor" of the rule has been sensibly relaxed, and now this presumption, like many others, is held to be subject to rebuttal.[3] The type and strength of evidence necessary to overcome the presumption has been stated in varied ways and prescribed in varying degrees. This variance of standards seems to be a reflection of the differing nature of the proceedings in which paternity has been questioned and what the effect of a finding of illegitimacy would mean to the child. But in several well-reasoned filiation cases it has been held that the common-law presumption may be overcome by a proper and sufficient showing that the husband was (1) impotent, (2) entirely ab-

---

2. Code 1940, 6–301. We note that this section also provides that if the child born be illegitimate no facts as to the identity of the parents or child need be disclosed. Section 6–302 prohibits false certification of facts therein.

3. Wigmore on Evidence, 3rd Ed., Vol. IX, section 2527; 10 C.J.S., Bastards, § 3b, p. 18; In re Findlay, 253 N.Y. 1, 170 N. E. 471; Hubert v. Cloutier, 135 Me. 230, 194 A. 303.

sent, (3) absent during the period of conception or (4) only present under such circumstances as afford clear proof that there was no sexual intercourse. Commonwealth v. Kitchen, 299 Mass. 7, 11 N.E.2d 482; In re Walker's Estate, 176 Cal. 402, 168 P. 689; Cinders v. Lewis, 93 Cal.App. 2d 90, 208 P.2d 687; Salas v. Olmos, 47 N.M. 409, 143 P.2d 871; Williams v. Moon, 98 Cal.App.2d 214, 219 P.2d 902; Jackson v. Jackson, 182 Okl. 74, 76 P.2d 1062 (to determine heirs). See annotation in 128 A.L.R. 713.

We think the probative standard just outlined is the proper one to be applied in a case of this kind. Realistically, it preserves and protects legitimacy as far as reason and common sense permit and as far as the child and society have a reasonable right to expect. At the same time it does not place too great a burden on the Government when it requires a practical evidentiary showing to overcome the presumption of legitimacy.

Moreover, what we have said is entirely in harmony with the letter and spirit of the statute under which the action was brought. Section 5 of the new Act gives the right to a married woman who was not living nor cohabiting with her husband during the period of conception to go into the Juvenile Court and accuse any man of being the father of her child. With this right to accuse is necessarily coupled the right and jurisdiction of the court to hear the case, and to receive evidence bearing on the question of paternity.

■ This brings us to another contention made by appellant. He maintains that the complainant 'was not competent to testify to the non-access by her husband during the time when in the course of nature the child could have been conceived. This question too has a long history in the law. It is traced, documented and analyzed in Wigmore on Evidence, 3rd Ed., Vol. VII, Sections 2063, 2064. There, and

in various cases cited, it is revealed that prior to 1777 there was no rule prohibiting the wife or husband from testifying to non-access. In filiation proceedings the most that was required was corroboration as to such facts when a child was being bastardized and a woman's husband being relieved of the burden of support. Then, in Goodright v. Moss, Cowp. 591, Lord Mansfield declared, seemingly by way of dictum, that the parents "shall not be permitted to say after marriage that they have had no connection, and therefore that the offspring is spurious; more especially the mother, who is the offending party." That rule has been widely followed in this country and is considered the prevailing rule.[4] Wigmore attacks it, not only because of the misguided interpretation on which it is based but because its reasons are all without merit. He says that a rule disallowing the testimony of a wife as to non-access of her husband for the often advanced reasons of decency, morality and policy, when she can testify to all other adulterous relations with a man she accuses as the father of her child, should fall in the face of realities.

Despite the weight of state decisions to the contrary, we are impressed with the basic fairness and logic of this position, and we adopt it. Our views on this specific question are the same as those stated in 1937 by the Supreme Court of Mississippi in Moore v. Smith, 178 Miss. 383, 172 So. 317. There will be found a full, orderly and logical exposition of this question and the common sense reasons for not following the Mansfield rule. The opinion carefully weighed and refuted the various contentions for invoking the ban against the testimony of the mother (or husband). Also to the same effect are Yerian v. Brinker, Ohio App., 35 N.E.2d 878; and Loudon v. Loudon, 114 N.J.Eq. 242, 168 A. 840, 89 A.L.R. 904. Furthermore, we think that by enacting the governing statute Congress went far toward saying that there should

4. 7 Am.Jur., Bastards, section 21; 2 L.R.A., N.S., 619, supplemented in L.R.A.1916B, 1053; Hall v. State, 176 Md. 488, 5 A.2d 916; Salas v. Olmos, 47 N.M. 409, 143 P.2d 871; Mink v. State, 60 Wis. 583, 19 N.W. 445; Hubert v. Cloutier, 135 Me. 230, 194 A. 303.

be no ban on the right of the mother to testify as to the husband's non-access. For of what avail would it be to open the front door of the court to a woman and allow her to enter and lodge her complaint and then, at the critical point of the trial itself, seal her lips and forbid her to tell the fundamental facts of the case? We conclude that there is no reason in law for such a ban and none on grounds of decency, morality or public policy.

Ruling as we do that the evidence was competent, we come next to what is the decisive question in the case—whether the evidence was sufficient to support the conviction. In that connection we first examine the charge to the jury which is criticized by appellant. The record shows that the court refused to charge the jury that if they found the husband had access to the wife (during the period when conception might have taken place) then the presumption that the husband is the father of the child must prevail. Instead the judge told the jury that "the Act under which defendant was being accused was applicable only in the case of a married woman who had not been living with, nor cohabiting with her husband during the period of time in which such child could have been conceived; that according to medical science, the period of gestation is 280 days and that for a child to be born on August 1, 1950, the date of the birth of the child herein, conception must have taken place some time between October 4 and November 15, 1949; that the fact that the defendant was being charged with being the father of the child was not an indication of his guilt, but that he was to be considered innocent until such time as he was found guilty beyond a reasonable doubt."

We think this charge does not meet the minimal requirements of the law applicable in such cases. The case being quasi-criminal in nature,[5] we think that if the case were to go to the jury at all,

the defendant was entitled to have the judge explain to the jury the essential elements of the Government's case and to tell them that if they believed from the evidence that the Government had not proved each and every element of the charge, their verdict must be for the defendant. See Williams v. United States, 76 U.S.App.D.C. 299, 131 F.2d 21; Davenport v. United States, D.C.Mun.App., 60 A.2d 226. We rule that the court was under a duty to explain the presumption of legitimacy and to tell the jury that in addition to proving that the defendant had sexual relations with the complainant during the period of possible conception, the Government had the burden of proving not only that the complaining witness was living apart from her husband during that period, but (there being no evidence that the husband was impotent, entirely absent, or absent during the period of conception), that his visits to her apartment were under such circumstances as to afford clear proof that there was no sexual intercourse between them. If that test had been applied, we think the trial judge would have been forced to the conclusion that there was indeed no case to submit to the jury. All the record shows on that point is that the complaining witness said that she was separated from her husband and that during the separation he "visited the complaining witness on the average of once a week for the purpose of taking money for the support of their minor children, said visits taking place in her apartment." There was no evidence at all that she and her husband did not have sexual relations during any of those visits. There was no attempt to elaborate on the nature of such visits, how long he stayed, whether it was in the daytime or nighttime, and who if anyone else was present with him. Thus there was an utter failure of proof as to the ultimate question in the case and the evidence was left in such a state that neither court nor jury could do more than speculate as to whether the presumption of legitimacy still

5. Peak v. Calhoun, 63 App.D.C. 113, 69 F.2d 989; Fuller v. United States, D.C.Mun.App., 65 A.2d 589.

prevailed or had been overcome by factual evidence. We are clear in our view that the judgment of the Juvenile Court was based on insufficient evidence and must therefore be reversed.

We have been at pains to discuss the case in all its details because with the enactment of the new statute a new field of paternity litigation has been opened up, and it has seemed advisable to indicate fully what we think is the applicable law.

Reversed, with instructions to award a new trial.

CLAGETT, Associate Judge, sat during the argument of this case and agreed with the foregoing opinion, but died before its publication.