No. A-CV-24-85

## Supreme Court of the Navajo Nation

Gary Davis, *Plaintiff-Appellant,*

*vs.*

Gloria Davis, *Defendant-Appellee.*

Decided July 22, 1987

# OPINION

*Before Bluehouse, Acting Chief Justice, Austin and Neswood (sitting by designation), Associate Justices.*

*William P. Battles, Esq., Fort Defiance, Arizona for the Appellant; James Jay Mason, Esq., Gallup, New Mexico for the Appellee.*

*Opinion delivered by Bluehouse, Acting Chief Justice.*

This case involves an appeal from the Window Rock District Court's August 15, 1985 Final Decree of Dissolution of Marriage. The court granted the plaintiff, Gary Davis, a divorce from the defendant, Gloria Davis, and awarded permanent care, custody and control of the child to the defendant, Gloria Davis. The parties stipulated to the division of all the property. Mr. Davis is appealing the district court's findings on the issues of paternity and division of property and debts.

Mr. Davis and Mrs. Davis were married on June 6, 1976 in Chinle, Arizona. They lived together as husband and wife until they separated in June of 1984. Mrs. Davis informed Mr. Davis that she was seeking a divorce on October 3, 1984. Mr. Davis filed suit seeking dissolution of the marriage on November 28, 1984. A child, conceived sometime in late May or early June of 1984, was born on February 19, 1985.

At trial Mrs. Davis testified that Mr. Davis was not the father of the child, and that she had engaged in an active sexual relationship with a third party during the period conception occurred. Mrs. Davis also testified that she had sexual intercourse with Mr. Davis only once during the period of conception, and that she was inaccessible to Mr. Davis during the rest of the period of conception. Mr. Davis stated that he maintained

an active sexual relationship with Mrs. Davis during the critical period. Mr. Davis underwent a vasectomy in the fall of 1982, and a reversal in February of 1984. A semen analysis was done on June 21, 1984; the results were not conclusive as to Mr. Davis's ability to father a child. The record includes a letter from a doctor stating that there was a possibility that Mr. Davis fathered the child. At some point in the proceedings, Mr. Davis requested blood grouping tests to determine the child's paternity. However, this request was later withdrawn in favor of the presumption that a child conceived and born during the marriage is presumed to be a child of the marriage.

In its final decision, the court found that Mr. Davis had "presented no expert evidence of his ability to have children during the critical time period," and that Mr. Davis was not the father of the child. Findings numbered 5 and 8. The court also found that Mrs. Davis overcame the presumption of legitimacy through her "testimony and other testimony." Finding numbered 7.

On the other issue, the record shows that the parties submitted a list of property and debts to the court and stipulated that the property and debts had been divided. The only remaining issue was the valuation placed on each item of property. The parties presented no evidence on valuation on appeal.

# I. Property

In a divorce the division of property and debts should be fair and just. *Charley v. Charley,* 3 Nav. R. 30 (1980). The parties agreed to a division of the property and debts, and stipulated to the agreement in court. It is well settled that a party has waived his right to disagree by not raising the issue at the district court. *Navajo Nation v. Bedonie,* 2 Nav. R. 131 (1979). If Mr. Davis did not agree with the division of property and debts, he should have objected at the trial. The record does not contain any evidence that Mr. Davis objected to the division of property and debts in the district court. Mr. Davis has presented no proof on appeal that he objected. The record is conclusive that issues relating to the property and debts have been stipulated to by the parties and that the distribution is fair and equitable.

An issue was raised regarding the valuation placed upon the property. However, Mr. Davis did not pursue this issue on appeal, but instead he appears to argue that the property and debt distribution was unfair. Even if there were questions as to valuation, Mr. Davis would be precluded from making that argument, because he has of his free will stipulated to the distribution of property and debts. Where there is no showing of injustice, the par-

ties will be bound by their stipulation. The district court's final decision on the division of property and debts is affirmed.

## II. Paternity

The issue of whether a married woman has standing to assert that her child born during wedlock is illegitimate is of first impression within the Navajo Nation. Under non-Navajo common law a married woman lacked standing to assert that her child is illegitimate. The rule was used to prevent married women from gaining custody of a child in a divorce proceeding solely upon assertions of illegitimacy. Public policy and the preservation of good morals also precluded the assertion of illegitimacy by a married woman. In New Mexico it has been held that a child born in wedlock is considered legitimate, and the mother cannot bastardize him. *Sacas v. Olmos*, 47 N.M. 408, 143 P.2d 871 (1943). Under non-Navajo common law only a husband had standing to dispute the paternity of his wife's child. The modern trend is to allow the mother the same ability to assert that her husband is not the father of her child.

In this case, to allow the husband standing to raise the issue of illegitimacy, and not the wife, raises questions of equal protection under the Navajo Bill of Rights, 1 N.T.C. §3 (1986), and the Indian Civil Rights Act, 25 U.S.C. §1302(8). Aside from these laws protecting civil rights, the Navajo people have traditionally recognized that Navajo women have equal status with Navajo men to participate in decisions affecting family and tribe. Based upon tradition and custom, the wife has equal standing in Navajo Courts to assert that her husband is not the father of her child. However, the district courts must not rely solely upon the wife's claims of illegitimacy in awarding custody of the child.

The principle that a child born to a married woman is presumed to be legitimate is universally recognized. The Navajo traditional view is consistent with this presumption, in that a child born during a marriage is considered the issue of that marriage. The presumption of legitimacy is based upon broad principles of natural justice. It was developed to protect the child from the disabilities attached to the status of illegitimacy. This presumption insures that the child has a father to support and care for him. It is one of the strongest presumptions known to law.

The presumption of legitimacy of a child born to a married woman is strong, but it may be rebutted by competent and relevant evidence. The burden of overcoming the presumption is upon the party challenging it, and the evidence must be clear and convincing. *State v. Mejia*, 97 Ariz. 215, 399 P. 2d 116 (1965); *State ex. rel. Munoz v. Bravo*, 139 Ariz. App. 393, 678 P.2d 974 (1984).

The Court is hesitant to stamp a child born in wedlock as illegitimate. Facts merely creating doubt and suspicion are not sufficient to rebut the presumption. Neither is evidence showing the mother's infidelity during the period of conception sufficient, by itself, to overcome the presumption. However, clear and convincing evidence proving one of the following will overcome the presumption of legitimacy: (1) That the husband is infertile or sterile and unable to father children; or (2) That the husband was entirely absent from his wife during the period conception must have occurred; or (3) That the husband was present but no sexual intercourse took place during the period of conception.

Blood grouping tests have been used with great success in other courts for determining paternity. Blood grouping tests may be used to exclude a person as the child's father, only where the court has satisfied itself as to the qualification of the expert testifying about the test procedures and results. If the evidence points with an equal degree of certainty to the husband and another man as father of the child, the doubt will be resolved in favor of legitimacy rather than illegitimacy. *Jackson v. Jackson,* 182 Okl. 74, 76 P.2d 1062 (1938).

The burden of overcoming the presumption of legitimacy is on Mrs. Davis because she is the party challenging it. Evidence was presented by Mrs. Davis that her husband had undergone a vasectomy in the Fall of 1982. However, the evidence also showed that Mr. Davis had a reversal in February 1984. We believe Mrs. Davis has failed to prove infertility through evidence of a vasectomy which was later reversed. The court then found that Mr. Davis had not presented any expert evidence of his ability to father children after he introduced evidence of the reversal. The district court erred in placing the burden of proving his ability to father children on Mr. Davis. The burden of proof is on Mrs. Davis to prove that her husband is sterile; not on Mr. Davis to prove that he is not.

The evidence on Mr. Davis's access to Mrs. Davis is conflicting. Mrs. Davis presented evidence that she was out of town and inaccessible during part of the critical time period, and she testified that she had intercourse with Mr. Davis once during this period. To overcome the presumption on the grounds of access, Mrs. Davis must prove that Mr. Davis had no access to her, or that no sexual intercourse took place during the period of conception. The final decision does not contain a finding on access, therefore we are unable to determine which facts were found by the district court to be credible. A finding that Mrs. Davis overcame the presumption based upon "her testimony and other testimony" does not answer the issue of access, and it does not support the finding that the presumption was rebutted.

The record does not support the finding that Mrs. Davis met her burden of proof with clear and convincing evidence. The judgment of the Window

Rock District Court on paternity cannot be sustained. The Court reverses the final decision on paternity, and remands to the Window Rock District Court for a hearing on the issue of paternity consistent with this Opinion.